## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CHRISTOPHER KOHLS and MARY
FRANSON,

*Plaintiffs*,

v.

Civil Action No. _____

KEITH ELLISON, in his official capacity as
Attorney General of Minnesota, and CHAD
LARSON, in his official capacity as County
Attorney of Douglas County,

*Defendants*.

## PLAINTIFFS CHRISTOPHER KOHLS & MARY FRANSON'S
## VERIFIED COMPLAINT

Plaintiffs Christopher Kohls and Mary Franson, by and through their

counsel, bring this Complaint against the above-named Defendants, and their

employees, agents, and successors in office, and allege the following upon

information and belief:

### INTRODUCTION

1.      In an effort to cleanse American politics—where lies, hysterics, and

hyperbole are commonplace—the Minnesota Legislature enacted Minn. Stat.

§ 609.771. The law was enacted as part of HF 1370, a bill that sandwiched a ban

on the dissemination of election-related, artificial intelligence (AI)-generated content in between two popular provisions aimed at banning AI-generated revenge porn. In so doing, Minnesota created a more dangerous attack on truth, speech, and free elections than the issue it attempts to resolve. Enforcement of Minn. Stat. § 609.771 must be enjoined as a flagrant violation of the First Amendment.

2.      Minn. Stat. § 609.771 attaches criminal penalties—including jail and fines—for the mere *dissemination* of certain AI-generated political content that "influence[s] an election." Candidates for Minnesota offices found guilty of such dissemination face additional penalties unprecedented in its severity: Forfeiture of their current campaign and a permanent ban on eligibility for future offices. The law does all of this using ill-defined phrases and without any tailoring to the specific harms the State alleges from pertinent content. Minn. Stat. § 609.771 is a sledgehammer disguised as a pair of tweezers.

3.      Plaintiff Mary Franson is a Minnesota State Representative representing House District 12B and running for reelection this November here in Minnesota.

4.     Rep. Franson has served since 2010, and she has always communicated with her constituents, colleagues, and ideological allies on social media. Recently, her primary platform has been X (formerly known as Twitter), but she also uses Instagram, Facebook, and YouTube. While Rep. Franson maintains an official website (teamfranson.com), an email list, and an official X account (@MaryFransonMN), she posts more content on her personal X account, @RepMaryFranson, which has almost 15 thousand followers. Her philosophy in posting is captured by the account's biography: "Memes, Jesus, Coffee (not necessarily in that order)."[1] While she tweets her own commentary on events, many of her posts are "memes," images or video clips created by others and either "retweeted" into her X feed or uploaded with a new tweet.

5.     These memes are often computer-edited or AI-created images and videos featuring the likeness of real politicians for comedic or satirical effect. For example, on September 16, Rep. Franson retweeted an account that posted "🤣🤣" (laughing emojis) in response to an image by the Babylon Bee, a satire publication, captioned "Oh No! Tim Walz Just Waved So Hard His Arms Flew

---

[1] @RepMaryFranson, X, https://x.com/RepMaryFranson.

Off!"[2] The accompanying image features the likeness of Gov. Walz at a political rally, except his forearms have flown off their bones. In fact, this never happened. The image has been altered for humorous effect. As an evidently more controversial example, on July 27, Rep. Franson retweeted X's owner, Elon Musk, who posted a video in the style of a campaign ad for Vice President Kamala Harris with the comment "This is amazing 🤩."[3] A voice that sounds like Kamala Harris narrates the "ad," and it says outlandish things like "Joe taught me rule number one: carefully hide your total incompetence." In fact, Harris never said this. The voiceover was generated to create a parody lampooning the candidate's political weaknesses. Videos like this plausibly fall within the scope of Minn. Stat. § 609.771, so disseminating this content—as by retweeting them—puts Rep. Franson at risk of politically-motivated prosecution to squelch her speech.

6.      Under Minn. Stat. § 609.771, Rep. Franson has more than just criminal penalties to worry about—under the law, she risks forfeiting eligibility for

---

[2]     https://x.com/JonJustice/status/1835765016227623272 [archive.ph/wip/KSx50].

[3] https://x.com/elonmusk/status/1816974609637417112 [archive.ph/t5xcU].

political office. Rep. Franson is running for re-election this year, and plans to run again in the future.

7.     Also, the statute allows citizens to sue to enjoin her speech, which is a real concern given that her opponent in the upcoming election, who lives across the street from her and has dug through her trash in the past to harass her,[4] is not above attempting to censor speech he dislikes. He was recently arrested for stealing campaign yard signs.[5]

8.     The Kamala Harris "ad" retweeted by Rep. Franson was created by Plaintiff Christopher Kohls, who posts humorous content commenting on and satirizing political figures on his popular YouTube, Facebook, and X channels under the screenname "Mr Reagan." On July 26, 2024, Kohls posted a video parodying candidate Kamala Harris's first presidential campaign ad. (The "July 26 Video"). The narration in it was AI-generated, but the video also features

---

[4] Emily Baude, *DFL 'disavows' 12B endorsement following accusations of threatening behavior*, KSTP (Apr. 16, 2024), https://kstp.com/kstp-news/local-news/dfl-backs-out-of-12b-endorsement-following-accusations-of-threatening-behavior/ [archive.ph/HkBio].

[5] *State House candidate, wife charged in Alexandria sign-stealing spree*, WCCO News (Aug. 12, 2024), https://www.cbsnews.com/minnesota/news/alexandria-sign-stealing-judd-hoff-wendy-hoff-charged/ [https://archive.ph/kPfU7].

real clips of Kamala Harris, which Kohls edited with graphics and narration into the parody. The humorous YouTube video is labeled "parody" and acknowledges "Sound or visuals were significantly edited or digitally generated."[6] Elon Musk was impressed by the video, calling it "amazing," and posted it on X, where his post garnered over 100 million views.[7] Musk's post was retweeted over 240 thousand times, including by Plaintiff Franson. Then California Governor Gavin Newsom responded to Kohls's video, promising he'll "sign[] a bill in a matter of weeks to make sure it is" illegal.[8] And roughly two months later, Newsom did just that, passing two bills aimed at Kohls's content, AB 2655 and AB 2839. Newsom then bragged that Kohls's content is purportedly illegal.[9]

---

[6] Mr Reagan, *Kamala Harris Ad PARODY*, YOUTUBE (Jul. 26, 2024), https://www.youtube.com/watch?v=sVspeqNnoWM (last visited September 20, 2024).

[7] https://x.com/elonmusk/status/1816974609637417112 [archive.ph/t5xcU].

[8] https://x.com/GavinNewsom/status/1817768956754788440 [archive.ph/MKxz5].

[9] https://x.com/GavinNewsom/status/1836188721663873324 [archive.ph/Dn2SI].

9.      Kohls has separately sued to challenge those laws as violating the First and Fourteenth Amendments. *See Kohls v Bonta*, No. 2:24-cv-2527 (E.D. Cal. Sep. 17, 2024). Then further research led to his discovery of HF 1370, which introduced Minn. Stat. § 609.771.

10.     With all the fireworks surrounding Kohls's content on X, including a major politician calling his July 26 Video "illegal" manipulation, he now worries his content is in the crosshairs of Minn. Stat. § 609.771, too—especially given Defendant Attorney General Keith Ellison's efforts to crackdown on purported misinformation, and support for the Brazilian censorship of X. *See* Shannon Varva, *State prosecutors push Facebook, Twitter to do more to slow virus misinformation*, CYBERSCOOP (Mar. 25, 2021);[10] Hank Long, *Legislators call on Walz to condemn Ellison's comment thanking Brazil after it banned X*, ALPHANEWS (Sept. 5, 2024).[11]

---

[10]     https://cyberscoop.com/vaccine-misinformation-coronavirus-facebook-twitter/
[https://web.archive.org/web/20240414055945/https://cyberscoop.com/vaccine-misinformation-coronavirus-facebook-twitter/].

[11] Available at: https://alphanews.org/legislators-call-on-walz-to-condemn-ellisons-comment-thanking-brazil-after-it-banned-x/
[https://web.archive.org/web/20240906012511/https://alphanews.org/legislators-call-on-walz-to-condemn-ellisons-comment-thanking-brazil-after-it-banned-x/].

11.    It is black letter law that statutes like Minn. Stat. § 609.771—which regulate political speech and crack down on satire—are unconstitutional.

12.    Accordingly, Plaintiffs file this Complaint against Defendants to ask the Court to enjoin the enforcement of § 609.771 and declare it as unconstitutional in violation of both the First and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

13.    Plaintiffs bring this action under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, for violations of the First and Fourteenth Amendments to the United States Constitution. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a).

14.    Plaintiffs' claims for declaratory and injunctive relief are also authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57 of the Federal Rules of Civil Procedure. The injunctive relief requested by Plaintiffs may be issued under Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1343(3). Finally, attorneys' fees and costs are awardable under 42 U.S.C. § 1988.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiffs' claims occurred in this district.

## PARTIES

16.     Plaintiff Mary Franson is a Minnesota State Representative and candidate for office in the State of Minnesota this 2024 election cycle, running for reelection as the legislator for House District 12B. She has filed the requisite paperwork and will appear on the ballot for that office this fall. She is also a resident of Minnesota, and lives in Douglas County. Franson follows Kohls's @MrReaganUSA X account and subscribes to his "Mr Reagan" YouTube account. Franson retweeted Kohls's AI-generated Harris ad on or about July 27, 2024, and regularly consumes and shares AI-generated content for political commentary.

17.     Plaintiff Christopher Kohls is the owner of the @MrReaganUSA X account and "Mr Reagan" YouTube account, where he regularly publishes political content from a conservative perspective. He has roughly 120,000 followers on X and 370,000 subscribers on YouTube who automatically receive his content. Kohls is a U.S. citizen and was most recently domiciled in Los Angeles, but over the last year has lived nomadically, traveling from one

international hotspot to another. He is in Bali as of this Complaint's filing. Kohls's tweets are shared with, retweeted, and viewed by Minnesota residents (including his co-plaintiff). In his own words, "My mission is to spread reason and rationality throughout the world. I don't believe in petty motivations, envy, hate, resentment, or greed. I believe in rational solutions to real problems. I believe that we have an obligation to help the less fortunate where they already live. And I believe in judgment, not based on the color of one's skin, but by the content of one's character."

18.     Defendant Keith Ellison is the Attorney General of Minnesota, and he's sued in his official capacity. In this role, he is the "chief law [enforcement] officer of the state," charged with defending its statutes including Minn. Stat. § 609.771. *Head v. Special School District No. 1*, 288 Minn. 496, 503 (Minn. 1970). He also has specific authority under § 609.771, subd. 4(1) to seek injunctive relief against those who violate the statute.

19.     Defendant Chad Larson is the County Attorney of Douglas County, where Franson resides and is running for office. As the elected criminal prosecutor for the county, Larson is responsible for bringing criminal charges and investigating criminal activity arising out of Minn. Stat. § 609.771's statutory

umbrella. He also is authorized to bring civil enforcement actions under Subd. 4(2) of the statute to enjoin dissemination of content which violates the law.

## STATEMENT OF FACTS

### Plaintiffs Disseminate Election-Related AI-Generated Videos

20.    Making fun of presidential candidates and other public figures is an American past time. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 54 (1988) ("Despite their sometimes-caustic nature, from the early cartoon portraying George Washington as an ass down to the present day, graphic depictions and satirical cartoons have played a prominent role in public and political debate."). Federalists and anti-Federalists penned dozens of parodic pieces in the style of their opponents during the 1787 Constitutional debates (even lampooning their opponents' pseudonyms). Aristophanes repeatedly lampooned Athenian general Cleon in several surviving and lost plays, depicting him as a petty and litigious bully in the 420s BC. Vaughn Meader won a Grammy for Album of the Year in 1963 for *The First Family*, at the time the fastest-selling album in history, featuring his impersonations of President John F. Kennedy. AI-generated political commentary, though a new mode of speech, falls squarely within this millennia-old tradition.

21.     There is a significant presence of conservative commentators online who made memes, videos, and posts about President Biden when he was the presumptive nominee for the Democratic Party. Kohls is one of them.

22.     Leftwing commentators online made, and continue to make, memes, videos, and posts about Harris's Republican opponent, former president Donald Trump.

23.     Regardless of politics, videos created with the use or assistance of generative artificial intelligence are one of the tools these satirists use to poke fun at various politicians and personalities.

24.     When Biden withdrew from the presidential race, much of the attention and commentary from conservative content creators shifted to Harris, then the presumptive Democratic nominee.

25.     Kohls's first Harris-focused video, the July 26 Video, is approximately one minute and fifty-three seconds long. It plays various video clips of Kamala Harris with an AI-generated voiceover mirroring Harris's voice in the style of a campaign ad. Harris never actually said the narrated words in the video; instead, a computer algorithm uses audio clips of her voice to mimic it and read aloud text written by Plaintiff Kohls.

26.     "Harris's" speech in the video reads as follows:

I, Kamala Harris, am your Democrat candidate for president because Joe Biden finally exposed his senility at the debate. Thanks Joe. I was selected because I am the ultimate diversity hire. I'm both a woman and a person of color. So if you criticize anything I say, you're both sexist and racist.

I may not know the first thing about running the country, but remember, that's a good thing if you're a deep state puppet. I had four years under the tutelage of the ultimate deep state puppet; a wonderful mentor, Joe Biden. Joe taught me rule number one: carefully hide your total incompetence.

I take insignificant things and I discuss them as if they're significant. And I believe that exploring the significance of the insignificant is in itself significant.

The video then features video and audio from a real Harris speech.[12] In the clip Harris says "Talking about the significance of the passage of time, right? The significance of the passage of time. So when you think about it, there is great significance to the passage of time," cutting the real video with a "swish" sound effect to conclude: "and there is such great significance to the passage of time." The AI-narration by "Harris" then continues:

---

[12] The clip comes from a speech Harris gave on March 20, 2022 in Sunset, Louisiana concerning rural broadband access. https://www.katc.com/news/st-landry-parish/vice-president-kamala-harris-to-visit-st-landry-parish-monday (last visited August 30, 2024) (remarks about the "significance to the passage of time" at 8:32).

> Another trick is trying to sound black. I pretend to celebrate Kwanzaa, and in my speeches, I always do my best Barack Obama impression.

The video again excerpts a real Harris speech:[13] "So hear me when I say, I know Donald Trump's type." The AI-narration by "Harris" continues:

> And okay, look, maybe my work addressing the root causes of the border crisis were catastrophic, but my knowledge of international politics is truly shocking.

Again, the video illustrates the fake voiceover with a real speech,[14] where Harris said: "The United States ["swish" cut] shares a very important relationship, which is an alliance with the Republic of North Korea. ["swish" cut] It is an alliance that is strong and enduring." The "Harris" AI-narration concludes:

> And just remember, when voting this November, it is important to see what can be, unburdened by what has been. And by what has been, I mean Joe Biden.

> You think the country went to [beeped out expletive] over the past four years? You ain't seen nothing yet. [Cackles].

---

[13] Susan Davis, Ben Giles, *Harris says, as a former prosecutor, 'I know Donald Trump's type'*, NPR (Jul. 22, 2024) https://www.npr.org/2024/07/22/g-s1-12690/democrats-rally-behind-vice-president-harris (last visited August 30, 2024).

[14] *Remarks by Vice President Harris After Tour of the Korean Demilitarized Zone*, THE WHITE HOUSE (Sep. 29, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/09/29/remarks-by-vice-president-harris-after-tour-of-the-korean-demilitarized-zone/ (striking through erroneous mention of "North" Korea).

27.     While the obviously far-fetched and over-the-top content of the video make its satirical nature clear to many viewers, Plaintiff entitled the video "Kamala Harris Campaign Ad PARODY."

28.     The video is a "video recording" within the meaning of § 609.771, which includes a "realistic" narration that Harris did not in fact engage in, and Kohls of course knew Harris had not actually said the narration in the ad—that was the entire point of him creating the parody ad using AI "technical means." Whether a "reasonable person" would know this appears to be a matter of debate insofar as California Gov. Gavin Newsom gives the outward appearance of being reasonable. The parody was not created with the consent of Kamala Harris, and it was made and distributed by Plaintiff Kohls with the intent of "injuring" Harris's electoral prospects and therefore to "influence the result of an election," which is nothing more than the fundamental First Amendment right to engage in political speech.

29.     The AI-generated ad has received millions of views; it also drew the attention of California Governor Gavin Newsom, who followed through on a public promise made on X to pass a law making Plaintiff's content illegal.

Newsom tweeted in reply to Kohls's video that "Manipulating a voice in an 'ad' like this one should be illegal. I'll be signing a bill in a matter of weeks to make sure it is." He then worked with the California Legislature to pass AB 2655, which forced social media companies like YouTube and X to take election-related AI-generated content off their sites, and AB 2839, which created a cause of action for recipients of election-related AI-generated content to sue its disseminator(s) for injunctive relief and damages. Kohls is separately challenging those laws as violating the First and Fourteenth Amendments before the Eastern District of California.

30.    Kohls's ad and Newsom's reply drew the attention of X owner and free speech advocate Elon Musk, who replied to Newsom from his X account that "I checked with renowned world authority, Professor Suggon Deeznutz, and he said parody is legal in America." (For Governor Newsom and anyone else who cannot tell, Mr. Musk is being facetious here even though his underlying point on the law is accurate.)

31.    Kohls has since generated other AI-generated campaign ads which represent Harris mocking her own campaign to illustrate what Kohls perceives as her absurd policy proposals and politically unacceptable candidacy. Kohls has

uploaded at least one video of an imaginary phone call between Harris and Tim Walz, featuring AI-generated dialog from both candidates where the voice of "Harris" claims "we're both radical communists" before recounting Walz's perceived political liabilities. *See Mr Reagan, Kamala / Tim Walz Phone Call PARODY,* YOUTUBE (Aug. 9, 2024).[15]

32.     All of Kohls's Harris-themed AI-generated videos were produced and shared since § 609.771 has been in effect. This year, Minnesota's legislature expanded § 609.771 in HF 4772, which was signed by Gov. Walz on May 17 and became effective in relevant part on July 1, 2024. The amendment makes criminal penalties under the statute apply "within 90 days before a political party nominating convention." § 609.771 Subd. 2(a)(3)(i). The DNC convention, which nominated Kamala Harris, took place less than a month after the July 26 Video was uploaded by Kohls and retweeted by Rep. Franson—from August 19 to 24, 2024.

33.     Rep. Franson retweeted Kohls's Harris video, which was embedded in @elonmusk's tweet on July 27, 2024, sharing it with roughly 14,700 followers of her personal twitter account, @RepMaryFranson. Franson watched the video

---

[15] https://www.youtube.com/watch?v=TEg7yY_Cv60 (last visited Sep. 25).

herself before disseminating it, to share a message critical of Harris's candidacy. While the narration voice is realistic, Plaintiff Franson knew that the narration in the video was not actually said by Kamala Harris. Moreover, Kamala Harris did not give Rep. Franson permission to retweet the satirical video. Plaintiff Franson "disseminated" the video—and "disseminates" other works that might fall under § 609.771—with the goal of lampooning and "injuring" the electoral prospects of candidates she believes would be bad for the country and bad for Minnesotans. By so doing, Franson hopes to play a small part in "influenc[ing] the outcome of an election." Rep. Franson proudly exercises her fundamental First Amendment right to engage in political speech, including through parodies that happen to have been created with the assistance of AI or other advanced "technical means."

34.     Plaintiff Franson is running for reelection as a Minnesota State Representative, district 12B. She remains a candidate for that race and intends to finish out the race (and win) this November election day, and intends to run for political office in the future. Her listed opponent has a troubling political and personal record, and in fact was disavowed by the Democratic-Farmer-Labor Party (aligned with the national Democratic Party which Kamala Harris is the nominee for). In the past, Plaintiff Franson's opponent dug through her trash in

order to publicly post her cell phone, and he has previously brandished a machete during a political argument over the American flag.[16] Most recently, he was arrested for stealing hundreds of political yard signs, which was apparently discovered during a routine traffic stop.[17] While the poor quality of Rep. Franson's political opponent virtually guarantees her re-election, § 609.771 threatens her in two distinct ways. First, a politically-motivated prosecution would disqualify her from public office in Minnesota. Second, Rep. Franson's opponent is manifestly censorious (as demonstrated by stealing political signs), and might take advantage of the private cause of action afforded to candidates under the statute and sue to enjoin her from posting. These outcomes would be appalling, undemocratic, and violate Plaintiff Franson's core First Amendment rights.

---

[16] *See* Riley Moser, *DFL-endorsed Minnesota House candidate accused of harassing opponent Rep. Mary Franson*, WCCO NEWS (Apr. 15, 2024), https://www.cbsnews.com/minnesota/news/dfl-endorsed-mn-house-candidate-accused-harassing-mary-franson/ [https://web.archive.org/web/20240627043724/https://www.cbsnews.com/minnesota/news/dfl-endorsed-mn-house-candidate-accused-harassing-mary-franson/].

[17] *State House candidate, wife charged in Alexandria sign-stealing spree*, WCCO NEWS (Aug. 12, 2024), https://www.cbsnews.com/minnesota/news/alexandria-sign-stealing-judd-hoff-wendy-hoff-charged/ [https://archive.ph/kPfU7].

35.     On July 29, Franson saw a tweet from Jeremy Munson (@JeremyMunson) commenting on the Newsom/Musk dust up and reminding Minnesotans that retweeting such content would also be illegal under Minnesota law.[18]

36.     Franson expressed concerns about liability, and politically-motivated enforcement, to her staffers. Rep. Franson knows that other Republicans have tamped down on social media because of concern about the law.

37.     Franson retweets other political videos that sometimes include elements generated by AI or other "technical means" that plausibly fall within the scope of § 609.771. Plaintiff Franson's social media presence uses humor and parody to lampoon the state's political establishment and national politicians. Her X account is part of how she communicates with constituents and potential voters, and she intends to continue using it even when naysayers can't take a joke. Rep. Franson is aware of the outrage political humor can cause, such as when her posting of a fake "Capitol Invasion" Lego set meme drew national attention. *See* Al Edenloff, *Republican legislators who represent Douglas County condemn violence*

---

[18]                    https://x.com/jeremymunson/status/1817916644062097803 [archive.ph/cHqOI].

*and threats at riot and rally*, ALEXANDRIA ECHO PRESS (Jan. 13, 2021).[19] The image was actually created by a liberal, and Franson retweeted it simply because it was funny, but the snowballing outrage opened her eyes to how a seemingly innocuous joke could transform into a politically-motivated prosecution with a poorly-drafted and censorious statute like § 609.771.

38.     Franson wishes to continue to see and share memes and AI-generated content that—like Kohls's videos—mocks politicians with whom she disagrees.

39.     Franson has accounts on X, Facebook, Instagram, and YouTube where she shares such content with her followers, and she wishes to continue doing so from now until the November 5, 2024, election day without the risk of prosecution, disqualification, or prior restraint from a potential lawsuit filed by an unhinged and censorious opponent.

### Section 609.771's Legislative History and Plain Text

40.     HF 1370 was introduced and read to the House on February 6, 2023. As it was introduced and passed, the portion of HF 1370 adding § 609.771 was

---

[19]     At: https://www.echopress.com/news/republican-legislators-who-represent-douglas-county-condemn-violence-and-threats-at-riot-and-rally [archive.ph/2lZbF].

sandwiched between two popular provisions providing remedies and penalties against deepfake "revenge porn."

41.     HF 1370 was originally referred to the House Elections Finance and Policy Committee, before being adopted and referred to the House Judiciary Finance and Civil Law Committee, which heard it on February 15, 2023. During this committee hearing, Rep. Altendorf asked whether deep fakes like this have actually occurred. HF 1370's sponsor at the hearing, Rep. Stephenson answered that both political and porn deepfakes, have happened in foreign countries, and revenge porn has happened in Minnesota, but "unfortunately" he's not aware of deepfakes happening within 60 days before an election in Minnesota; the elections part of the bill is "prophylactic."[20]

42.     The House Judiciary Finance and Civil Law Committee likewise adopted the bill after adopting an amendment that added a private cause of action for injunctive relief for political deepfakes, and referred it to the House Public Safety Finance and Policy Committee.[21] That committee heard the bill on March 9,

---

[20] MNHouseInfo, *House Elections Finance and Policy Committee 2/15/23*, YOUTUBE (at 16:57) https://www.youtube.com/watch?v=fzDgIvcdVew&t=1017s.

[21] Journal of the House, 30th day, pp. 1317-18, available online at: https://www.house.mn.gov/cco/journals/2023-24/J0306030.htm#1318.

and Rep. Novotny asked whether there's actually been a problem with election deepfakes. Rep. Stephenson says the example he's been using to illustrate the dangers of deepfakes in US elections is not from the US but from Ukraine, where a deepfake of Pres. Zelensky urging his troops to retreat and surrender circulated widely.[22] The committee voted to adopt it as amended on March 9, which was reported back to the floor on March 15.

43.     After being placed on the calendar and read for a third and final time, the Minnesota House heard HF 1370 on March 30, 2023. On the floor, Rep. Neu Brindley proposed an opposed amendment to narrow the definition of "deep fake" to exclude still images. The amendment would have added the text: "Deep fake does not include an electronic image or photograph produced using photo editing software, unless the image or photograph is accompanied by an audio or video recording that appears to authentically depict the speech or conduct of an individual appearing in the image or photograph and the individual did not in fact engage in such speech or conduct."[23] Rep. Neu Brindley explained that "it is

---

[22] MNHouseInfo, *House Public Safety Finance and Policy Committee 3/9/23*, YOUTUBE (at 1:00:10) https://youtu.be/Dy40xQae_1M?t=3610s.

[23] Journal of the House, 43rd day, p. 2547, available online at: https://www.house.mn.gov/cco/journals/2023-24/J0330043.htm#2547.

difficult to infer speech or conduct when it comes to an image," and circulated examples of actual campaign advertisements that appeared to show candidates shredding a page that says "campaign promises," putting their finger up to their mouth as if shushing library patrons, and other things that did not really happen. Rep. Neu Brindley remarked, holding one of the campaign images "this is clearly not real… if they are cartoonish, if they are depicting something that is clearly not a deep fake, those things would be within-bounds."[24]   Sponsor Rep. Stephenson opined that still images can be deepfakes, citing the image of a "former president of the United States being arrested."[25] "You can imagine the harm that [the fake images] could do without any opportunity for redress" two weeks before an election. Rep. Stephenson apparently referred to AI-generated images of Trump being arrested, which were originally posted by journalist Eliot Higgins ten days before the House floor session with the comment "Making pictures of Trump getting arrested while waiting for Trump's arrest."[26] Apparently Rep. Stephenson

---

[24] Rep. Neu Brindley's presentation at: MNHouseInfo, *House Floor Session 3/30/23*, YOUTUBE (at 1:13:20) https://youtu.be/OyAZkqMGgMQ?t=4420s.

[25] MNHouseInfo, *House Floor Session 3/30/23*, YOUTUBE (at 1:21:10), https://www.youtube.com/watch?v=OyAZkqMGgMQ&t=4870s.

[26] @EliotHiggins, X, https://x.com/EliotHiggins/status/1637927681734987777 [archive.ph/wip/7mVFk].

believed circulating such images should be criminal, when posted within 90 days of an election. Rep. Niska disagree, supporting the amendment, which he said dealt with "really important core free speech issues" and "our rights to engage in core political speech" which the state should not "chill."[27] However, the amendment was rejected in a voice vote. Plaintiff Franson voted in favor of the amendment.

44.     Following the failed amendment, the bill passed unanimously and moved to the Senate. Plaintiff Franson voted in favor of the entire bill because she believes the provisions against deepfake porn are important, especially to women.

45.     The Senate returned the bill with amendments two months later on May 10, but the House refused to concur with the Senate's version. Some background is necessary.

46.     Senators had sponsored similar legislation, which was originally almost verbatim with HF 1370. The Senate version of the bill was called SF 1394. The Senate Elections Committee heard this bill on March 14, 2023, when its

---

[27] MNHouseInfo, *House Floor Session 3/30/23*, YOUTUBE (at 1:22:21), https://www.youtube.com/watch?v=OyAZkqMGgMQ&t=4941s.

sponsor Senator Quade showed a satirical computer-generated video of President Obama impression by Jordan Peele saying, among other humorous things, "Killmonger was right" and "we need to be vigilant with what we trust on the internet."[28] Sen. Quade said that deepfakes "have serious implications for privacy, free speech, and the integrity of our elections."[29] She opined that the elections portion of the bill was necessary to combat "deepfakes in political propaganda and election interference. With the increasing sophistication of these technologies it is becoming easier to create convincing fake news or propaganda that is designed to manipulate public opinion."[30] Sen. Matthews remarked that he thought it would be "wise" to separate section 2 of the bill—the part concerning political deepfakes—as a "separate bill" from the other sections

---

[28] Minnesota Senate Media Services, *Committee on Elections – 03/14/23*, YouTube (at 1:17:07), https://www.youtube.com/live/eABxOrPeM2I?t=4627s.

Erik Killmonger is a fictional villain in the Black Panther universe who sought black liberation through violence and conquest. *See* Adam Serwer, *The Tragedy of Erik Killmonger*, The Atlantic (Feb. 21, 2018), https://www.theatlantic.com/entertainment/archive/2018/02/black-panther-erik-killmonger/553805/ [https://archive.ph/4SJ8b].

[29] Minnesota Senate Media Services, *Committee on Elections – 03/14/23*, YouTube (at 1:19:48), https://www.youtube.com/live/eABxOrPeM2I?t=4784s.

[30] n.29 (at 1:20:19), https://www.youtube.com/live/eABxOrPeM2I?t=4819s.

concerning revenge porn, which he thought would win unanimous support, and questioned "do we have clear enough specificity—are we drawing a line on the far end of a spectrum to only things that are *über* realistic and…we're not accidentally, with a broad swath, sweeping in cartoon creations, *Saturday Night Live* sketches—I don't think they skewer candidates in a consensual way…that's some of the free speech, entertainment offshoot that has come from that [AI generation]. And how do we make sure that we've narrowly got this written for just that extreme end of the spectrum…?"[31] Sen. Quade responded that she's reluctant to make a new crime because "we typically don't find when we make things a crime they stop," but directed Sen. Matthews to the bill's definition of "deep fake" which applies to depictions where "the production of which was substantially dependent upon technical means rather than the ability of another individual to physically or verbally impersonate," so "all SNL fans can rest easy— I myself being one of them—this really isn't meant to get at, you know, characterizations or the lampooning of candidates," but instead "the creation of videos or digital things that are meant to depict candidates or people doing things that they have not done, and that people can't look at and tell that they did not

---

[31] n.29 (at 1:25:50), https://www.youtube.com/live/eABxOrPeM2I?t=5150s.

do those things."[32] Sen. Quade responded to another question about misleadingly edited content that those would not be considered "deepfakes" because edits do not require "substantial technical means, it just requires like a small editing tool on a computer," and since "editing together a speech shows someone giving a speech they did in fact give, whether they edited it together a little misleadingly or not."[33] SF 1394 passed unanimously out of the Senate Elections Committee.

47.     The Senate Judiciary and Public Safety Committee heard SF 1394 on March 24, 2023. Sen. Quade reported that she had added an amendment, apparently suggested by the entertainment and motion picture industry, that would have added exceptions for parody and satire, but these amendments oddly only applied to parts of the bill concerning revenge porn.[34] In response to a suggestion that the bill should include tougher penalties for political deepfakes, Sen. Quade admitted that there were no examples of political deepfakes and that "without having concrete real-world examples to point to—to say here is an example of harm that was done with a deepfake" it would be inappropriate to

---

[32] n.29 (at 1:27:33), https://www.youtube.com/live/eABxOrPeM2I?t=5253s.

[33] n.29 (at 1:27:33), https://www.youtube.com/live/eABxOrPeM2I?t=5381s.

[34]     Journal      of      the      Senate,      41st      day,      p.      337, https://www.senate.mn/journals/2023-2024/20230327041.pdf#page=337.

ratchet up penalties; "we're trying to stop it from starting instead of addressing something that's currently happening—or, currently harming people in a broad way."[35] SF 1394 passed unanimously and would have been sent to the Senate floor.

48.     Instead, due to the intervening passage of HF 1370 out of the House, the Senate Rules and Administration substituted the text from SF 1394 into HF 1370.[36] Thus amended, the Senate floor considered and passed HF 1370 on May 10, 2023. On that date, Sen. Quade announced an amendment removing the parody and satire exceptions, which only applied to the revenge porn parts of the bill.[37] The bill passed 64-to-1 and was reported back to the House on the same day.

49.     On May 10, 2023, House sponsor Rep. Stephenson recommended refusing to concur with Senate amendments for HF 1370 (the substitution of the

---

[35] Minnesota Sen. Media Services, *Committee on Judiciary and Public Safety – Part 2 – 03/24/23*, YOUTUBE (at 1:28:55), https://www.youtube.com/live/c5MbSQBx4BQ?t=5335s.

[36] Journal of the Senate, 45th day, pp. 3415-16, https://www.senate.mn/journals/2023-2024/20230404045.pdf#page=407.

[37] Journal of the Senate, 45th day, pp. 7297-80, https://www.senate.mn/journals/2023-2024/20230510066.pdf#page=145.

House language for the slightly divergent text of former SF 1394), explaining only "we have a few things to work out."[38] The Minnesota Legislature created a joint committee to address differences between the House and Senate on HF 1370.

50.     The joint committee went through various iterations, amendments, and motions on their version of the bill over roughly five days of work. Initially, the joint committee added text from a previously-unrelated House bill to HF 1370, which would have included unrelated requirements concerning "age-appropriate design" on social media platforms, which the House adopted on May 12 in  a largely party-line vote of 71-58.[39] However, Rep. Stephenson reopened the matter three days later, citing "rough waters" passing the merged bill in the Senate.[40] Ultimately, the final version of the bill agreed to by the joint committee was overwhelmingly passed.

---

[38]   MNHouseInfo, *House Floor Session 5/10/23*, YOUTUBE (at 1:04) https://www.youtube.com/watch?v=LY90x9_04gA&t=64s.

[39] Minn. House, *Unofficial Recorded Roll Call Floor, H.F. 1370* (May 12, 2023), https://www.house.mn.gov/votes/votes.asp?ls_year=93&billnum=HF1370&session_number=0&year=2023&id=523.

[40] MNHouseInfo, *House Floor Session 5/15/23 – Part 2*, YOUTUBE (at 47:20) https://www.youtube.com/watch?v=FrA_BbXMox4&t=2840s.

51.     The House voted in favor the Joint Committee's report first, on May 16, 2023. Rep. Nash remarked that "sometimes legislative intent matters," so would the sponsor yield to a question about Election deepfakery?[41] Rep. Stephenson responded that HF 1370 remained unchanged from the earlier House version without Rep. Neu Brindley's amendment, and so it includes still images, as before, "if that's what your question is getting at."[42] Rep. Niska asks whether he recalled correctly that there was an exception for satire and parody in the bill, and whether the sponsor could explain why it was removed.[43] Rep. Stephenson replied that those only covered the sections concerning pornography and the joint committee did not believe those exceptions should apply to pornography, which satisfied Rep. Niska.[44] The House adopted HF 1370 unanimously. Franson voted for the bill, again because she believes the provisions against deepfake porn are important, especially to women.

---

[41] MNHouseInfo, *House Floor Session 5/16/23 – Part 3*, YOUTUBE (at 5:19:03) https://www.youtube.com/watch?v=DX3gSKbz2GI&t=19133s.

[42] *Supra* n.41 (at 5:19:32) https://youtu.be/watch?v=DX3gSKbz2GI&t=19172s.

[43] *Supra* n.41 (at 5:22:50) https://youtu.be/watch?v=DX3gSKbz2GI&t=19370s.

[44] *Supra* n.41 (at 5:23:05) https://youtu.be/watch?v=DX3gSKbz2GI&t=19385s.

52.     The Senate adopted the same bill the next day, by a vote of 66-1.[45]

53.     Minnesota Governor and current Democratic Vice Presidential nominee Tim Walz approved the bill on May 26, 2023.

54.     Of note, while Franson supported HF 1370, that was because the bill smuggling its political speech deepfake ban between sections banning nonconsensual pornographic deepfakes. As an ardent supporter of women, Franson didn't feel that she could oppose the entire bill, including the sections addressing pornographic deepfakes. Also, the use of AI-generated speech and its application to political speech was still relatively unknown when HF 1370 passed in May 2023. Both Senate and House sponsors admitted they knew of no problematic examples occurring in America while promoting the bill.

55.     HF 1370 criminalized the "*dissemina[tion]*"—not only the creation—of "deep fake[s] to influence an election," so long as it was (1) within "90 days before an election"; (2) created without a candidate's consent; and (3) "made with the intent to injure a candidate or influence the result of an election." Minn. Stat. § 609.771 subd. 2 (2023).

---

[45] Minnesota Senate Media Services, *Senate Floor Session – Part 2 – 05/17/23*, YOUTUBE (at 1:26:27), https://www.youtube.com/live/rYYbbX-76kU?t=5187s.

56.     A "deep fake" is video, image, or photograph that (1) "is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct"; and, (2) "the production of which was substantially dependent upon technical means, rather than the ability of another individual to physically or verbally impersonate such individual." § 609.771 subd. 1(c) (2023).

57.     HF 1370 introduced punishments that include jail time and fines if the State can demonstrate criminal liability, as well as the availability of obtaining injunctive relief to take down AI-generated "deep fake" videos for both public and private plaintiffs, including the depicted individual and/or candidates for office "injured or likely to be injured by dissemination." Minn. Stat. § 609.771 subd. 3 & 4.

58.     HF 1370 also provides for conspiracy liability for people or organizations which "enter[] into a contract or other agreement to disseminate a deep fake." Minn. Stat. § 609.771 subd. 2.

59.     In its original form, § 609.771 already had multiple, severe constitutional flaws; but then this past May, the Legislature and Governor Waltz

amended § 609.771 (through HF 4772) to make it even more violative of Plaintiff's speech rights and those of all Minnesota residents.

60.     Unlike the statute, which passed near-unanimously, HF 4772 passed along party lines, with primarily DFL-affiliated legislators voting for the changes. Plaintiff Franson voted against HF 4772 multiple times along its legislative history.

61.     The amended version of the statute requires a court to declare that any state or local candidate found to have disseminated an AI-generated "deep fake" in violation of the statute has forfeited their "nomination or office." Minn. Stat. § 609.771 subd. 3(b) (2024).

62.     Moreover, a candidate who violates § 609.771's ban on disseminating election-related AI-generated deep fakes is "disqualified from being appointed to that office or any other office for which the legislature may establish qualifications under the Minnesota Constitution." Minn. Stat. § 609.771 subd. 3(c) (2024). Forever.

63.     It also allows complainants to bring suits for "equitable," in addition to "injunctive," relief. Minn. Stat. § 609.771 subd. 4 (2024).

64.    The amended § 609.771 exempts "broadcaster[s]" and "cable television system[s]" which disseminate election-related AI-generated "deep fakes" when produced by an actual candidate and required by federal law. Minn. Stat. § 609.771 subd. 2(b) (2024).

65.    Finally, HF 4772 expands § 609.771's temporal reach: The law now applies to AI generated videos made "within 90 days before a political party nominating convention"; or, "after the start of the absentee voting period prior to a presidential nomination primary, or a regular or special state or local primary or general election." Minn. Stat. § 609.771 subd. 2(a)(3) (2024).

66.    Perhaps the only good news to come out of HF 4772 for the First Amendment was that the Legislature tightened the *mens rea* for dissemination liability. The new version imputes liability to disseminators of AI-generated content who act "knowing[ly]" or with "reckless disregard," Minn. Stat. § 609.771 subd. 2(a) (2024), rather than a "know[ing] or reasonably should [be] know[ing]" standard originally enacted by HF 1370. But this change is irrelevant to both Plaintiffs, who have disseminated and wish to continue disseminating AI-generated election content knowingly.

67.     The initial § 609.771 went into effect on August 1, 2023. The amended § 609.771 went into effect on July 1, 2024. All of the relevant actions by Plaintiffs in this Complaint implicating the act occurred after the amended statute went into effect.

## Irreparable Harm

68.     As a result of § 609.771, both Plaintiffs are irreparably harmed.

69.     Kohls has already produced multiple videos with AI-generated audio mocking Vice President Harris that are intended to reduce her odds of winning election. These are "deep fakes" within the meaning of § 609.771. These videos have been disseminated to various X and YouTube users in Minnesota, and they remain readily available for viewing by Minnesota residents on Kohls's X and YouTube pages. On information and belief, Minnesota residents continue to view these videos.

70.     Kohls's postings are both within 90 days of a party's nominating convention and, as they have remained online, are also within 90 days of the November 5, 2023 election, and at this time early voting has already begun.

71.     Accordingly, Kohls has potential criminal liability (both financial and personal) under Minn. Stat. § 609.771 as a result of his creating and sharing

multiple AI-generated videos mocking Vice President Harris on X and YouTube that were viewed in Minnesota.

72.     Kohls July 26 Video has been singled out as a realistic election deepfake. California Gov. Gavin Newsom, characterized it as a " misleading deepfake in the middle of an election." Jamie Joseph, *Newsom's deepfake election laws are already being challenged in federal court*, FOX NEWS (Sep. 20, 2024).[46]

73.     News outlets issued "fact-checks" about the video. VERIFY, a team owned by TEGNA, the country's largest owners of local television stations, also issued a fact-check about the parody and video story for use by member stations. Erin Jones, *Kamala Harris campaign ad shared by Elon Musk is not real*, VERIFY (Jul. 29, 2024).[47] *See also* Ed Payne, Fact Check: *Video Is NOT Real Campaign Ad Using Kamala Harris' Voice, It's Deepfake*, LEAD STORIES (Jul. 29, 2024).[48]

---

[46]     Available online at: https://www.foxnews.com/politics/newsoms-deepfake-election-laws-already-being-challenged-federal-court [https://archive.ph/6qdlY].

[47]     Available at: https://www.verifythis.com/article/news/verify/social-media/kamala-harris-campaign-ad-video-shared-by-elon-musk-is-manipulated-ai-fact-check/536-af978101-50d9-41eb-979b-43f9cdbab01e [https://archive.ph/wip/BzTo3].

[48]     Available at: https://leadstories.com/hoax-alert/2024/07/fact-check-video-is-not-real-campaign-ad-using-kamala-harris-voice.html [https://archive.ph/xeRMi].

74.     Others opined that the July 26 Video would be seen as real by viewers. Rob Weissman, co-president of the advocacy group Public Citizen claimed that "most people" would be deceived by the video. "I'm certain that most people looking at it don't assume it's a joke… precisely because it feeds into preexisting themes that have circulated around her, most people will believe it to be real." Ali Swenson, *A parody ad shared by Elon Musk clones Kamala Harris' voice, raising concerns about AI in politics*, AP (Jul. 29, 2024).[49]

75.     U.S. Senator Amy Klobuchar echoed this sentiment, tweeting about the July 26 Video posted by Musk: "If @elonmusk and X let this go and don't label it as altered AI content, they will not only be violating X's own rules, they'll be unleashing an entire election season of fake AI voice and image-altered content with no limits, regardless of party."[50] Sen. Klobuchar attached a link to a news story suggesting that Musk's tweet of the July 26 Video violated X's policy on synthetic and manipulated media. Ken Bensinger, *Elon Musk Shares Manipulated*

---

[49]   Available at:   https://apnews.com/article/parody-ad-ai-harris-musk-x-misleading-3a5df582f911a808d34f68b766aa3b8e [https://archive.ph/N2Djv].

[50]   https://x.com/amyklobuchar/status/1817544497217032196 [archive.ph/fbbm9]

*Harris Video, in Seeming Violation of X's Policies*, NEW YORK TIMES (Jul. 27, 2024).[51]

That policy in turn resembles § 609.771 because it applies to "misleading media" which includes "media that is significantly and deceptively altered, manipulated or fabricated" or "likely to result in widespread confusion on public issues." X Help Center, *Synthetic and manipulated media policy*.[52] Since Sen. Klobuchar believes the video is "deceptively… fabricated" or "likely to result in widespread confusion," under X's policy, it is logically also "so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct" under § 609.771, Subd. 1(c)(1).

76.     Section 609.771's imposition of criminal liability deters reasonable speakers of ordinary firmness from disseminating political speech that uses AI-generated facsimiles of politicians, thus violating speakers' free expression rights.

77.     Kohls' existing X and YouTube AI-generated videos are also at risk of being taken down because of § 609.771's injunctive relief penalty, which creates a

---

[51]  At: https://www.nytimes.com/2024/07/27/us/politics/elon-musk-kamala-harris-deepfake.html [https://archive.ph/zUyJt].

[52]     Available online at: https://help.x.com/en/rules-and-policies/manipulated-media [https://archive.ph/zP7wN].

public and private right of action to remove content violating the statute for the individuals targeted and for the government generally.

78.     Kohls' livelihood is materially harmed by § 609.771. The chilling effect and enforcement of the law will dissuade others from sharing his content and preclude him from earning a living, which he currently does via monetization of his content on YouTube and X.

79.     Most importantly, § 609.771 deprives Kohls of his ability to create and disseminate protected political speech.

80.     Separately, Franson retweeted at least one of Kohls's videos after July 1, 2024, and thus has the same exposure to criminal liability as Kohls for dissemination under § 609.771.

81.     Franson is also chilled from sharing AI-generated content aimed at Governor Walz, Kamala Harris, her political opponent in her House race, and other Minnesota politicians as a result of § 609.771.

82.     Franson's retweet of Kohls's video and her desire to continue to share political memes with AI-generated depictions of politicians (including "deep fakes" under § 609.771) uniquely expose her to additional penalties under

§ 609.771, namely forfeiture of this election and permanent disqualification from all Minnesota constitutional offices.

83.     Franson intends to run for office again in 2026 and subsequent elections for the foreseeable future. She does not wish to be disqualified from her office, much less to have the results of a free and fair election discarded due to zealous enforcement of § 609.771.

84.     Like with Kohls, § 609.771 deprives Franson of her ability to create and disseminate protected political speech. Her candidacy is also materially harmed since she is unable to campaign while disseminating AI-generated social media videos and memes.

85.     Because of § 609.771's conspiracy liability and both Plaintiffs' proclivity for sharing others' election-related AI-generated content on their own channels, Plaintiffs reasonably fear that Defendants or other third parties which oppose Plaintiffs' content will pursue conspiracy actions based on another person's content, too.

86.     Finally, both Plaintiffs wish to see and consume other video creators' political AI-generated content that would be available online absent § 609.771.

## CAUSE OF ACTION

### Count I – Facial Violation of the First Amendment and Minn. Const. art. I § 3 (42 U.S.C. § 1983 – Free Speech Clause – Facial)

87.     Plaintiffs reassert and reallege paragraphs 1 through 86 as if fully set forth therein.

88.     According to the First Amendment to the United States Constitution, "Congress shall make no law … abridging the freedom of speech."

89.     The First Amendment is incorporated to apply to the states through the Fourteenth Amendment.

90.     Minn. Stat. § 609.771 constitutes an impermissible and unreasonable restriction of protected speech because it burdens substantially more speech than is necessary to further the government's legitimate interests in ensuring fair and free elections.

91.     Section 609.771 bars and chills speech on the basis of content. It is not content-neutral because it only applies to AI-generated speech which is related to elections. Specifically, such speech which is intended "to influence an election."

92.     Section 609.771 is substantially overbroad because it does not adequately define various material terms in the statute, including "disseminate deep fake," "injure a candidate," or "influence the result of an election."

93.     Section 609.771 is not narrowly tailored to any government interest. The state has no significant legitimate interest in acting as a Ministry of Truth. This is a timeless constitutional principle. *See*, *e.g.*, *Whitney v. California*, 274 U.S. 357, 377 (1927) ("If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence"). Moreover, the State cannot regulate or bar political speech other than to prevent political corruption or the appearance thereof, which is not an issue here nor a basis of § 609.771. *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 305 (2022).

94.     Section 609.771 attaches criminal sanctions to the free exercise of protected political speech. Moreover, the disqualification provision that threatens Franson (and any other candidate for Minnesota political office, present or future) for violating § 609.771 is a separate punitive sanction unlawfully attaching to protected political speech and runs contrary to the public interest in determining elected officials at the ballot box.

95.     To the extent that § 609.771 is constitutional in any of its applications, it is nonetheless substantially overbroad in relation to any legitimate sweep and is facially unconstitutional for that reason.

96.     42 U.S.C. §§ 1983 and 1988 entitle Plaintiffs to declaratory relief, nominal damages, and preliminary and permanent injunctive relief invalidating and restraining enforcement of § 609.771. Unless Defendants are enjoined from enforcing § 609.771, Plaintiffs will suffer irreparable harm that cannot fully be compensated by an award of monetary damages.

97.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees under 42 U.S.C. § 1988.

### Count II –Violation of the First Amendment and Minn. Const. art. 1 § 3 as Applied to Plaintiffs
### (42 U.S.C. § 1983 – Free Speech Clause – As Applied)

98.     Plaintiffs reassert and reallege paragraphs 1 through 97 as if fully set forth therein.

99.     Section 609.771 is unconstitutional as applied specifically to Plaintiffs.

100.     Section 609.771 will be enforced against Plaintiffs and impose criminal liability on them for creating and/or disseminating AI-generated political commentary on social media.

101.    It is also separately unconstitutional as applied to Franson, because violations of § 609.771 result in forfeiture of her current election and a permanent barring of her eligibility from future Minnesota political offices.

102.    42 U.S.C. §§ 1983 and 1988 entitles Plaintiffs to declaratory relief, nominal damages, and preliminary and permanent injunctive relief invalidating and restraining enforcement of § 609.771. Unless Defendants are enjoined from enforcing § 609.771, Plaintiffs will suffer irreparable harm that cannot fully be compensated by an award of monetary damages.

103.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees, as well as reasonable costs of suit, under 42 U.S.C. § 1988.

### Count III –Violation of the Fourteenth Amendment
### (42 U.S.C. § 1983 – Due Process Vagueness)

104.    Plaintiffs reassert and reallege paragraphs 1 through 103 as if fully set forth therein.

105.    The Fourteenth Amendment provides "… nor shall any State deprive any person of life, liberty or property, without due process of law."

106.    Due process requires that people of ordinary intelligence be able to understand what conduct a given statute, rule or regulation prohibits.

107.   Statutes, rules, or regulations that fail to provide this fair notice and clear guidance are void for vagueness.

108.   Statutes, rules, or regulations that authorize or even encourage arbitrary or viewpoint discriminatory enforcement are void for vagueness.

109.   Statues, rules, or regulations implicating and jeopardizing First Amendment rights are required to be especially precise.

110.   Minn. Stat. § 609.771 chills and restrains political humorists, subjecting them to censorship and other punitive sanction from platforms that host their speech.

111.   People of ordinary intelligence cannot understand what § 609.771 requires.

112.   Plaintiffs cannot understand or reasonably discern what § 609.771 requires, allows, or bars.

113.   Section 609.771 does not provide fair notice of what it prohibits.

114.   Section 609.771 authorizes and encourages discriminatory enforcement based on political preferences of enforcement authorities.

115.   Section 609.771's use of the phrase "the production of which was substantially dependent upon technical means" is unconstitutionally vague.

116.    Section 609.771's use of the phrase "so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct" is unconstitutionally vague.

117.    Section 609.771's use of the phrase "made with the intent to injure a candidate or influence the result of an election" is unconstitutionally vague.

118.    Section 609.771's use of the phrase "disseminates a deep fake" is unconstitutionally vague.

119.    Section 609.771 violates the Due Process Clause of the Fourteenth Amendment and so is void for vagueness.

120.    The vagueness of § 609.771 chills protected speech and thereby also violates the First Amendment.

121.    42 U.S.C. §§ 1983 and 1988 entitles Plaintiffs to declaratory relief, nominal damages, and preliminary and permanent injunctive relief invalidating and restraining enforcement of § 609.771. Unless Defendants are enjoined from enforcing § 609.771, Plaintiffs will suffer irreparable harm that cannot fully be compensated by an award of monetary damages.

122. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees, as well as reasonable costs of suit, under 42 U.S.C. § 1988.

### REQUEST FOR RELIEF

Therefore, Plaintiffs respectfully requests the following relief:

A. A declaratory judgment that Minn. Stat. § 609.771 facially violates the First and Fourteenth Amendments to the United States Constitution;

B. A permanent injunction prohibiting Defendants and their agents from enforcing § 609.771;

C. An award of nominal damages against Defendant Larson;

D. An award of attorney's fees, costs, and expenses in this action; and

E. Any other legal or equitable relief to which Plaintiffs may show themselves to be justly entitled.

Dated: September 27, 2024    Respectfully submitted,

/s/ *Alexandra K. Howell*
Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
Alexandra K. Howell (#0504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Drive, Suite 140
Minnetonka, MN 55343
Voice: 612-428-7000
Email: Doug.Seaton@umlc.org
James.Dickey@umlc.org
Allie.Howell@umlc.org

M. Frank Bednarz (*pro hac vice* forthcoming)
HAMILTON LINCOLN LAW INSTITUTE
1440 W. Taylor St # 1487
Chicago, IL 60607
Voice: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Plaintiffs Christopher Kohls*
*and Mary Franson*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Christopher Kohls have personal knowledge of the matters alleged in the foregoing Verified Complaint concerning myself, my activities and my intentions. I verify under the penalty of perjury that the statements made therein are true and correct.

Executed on September 27, 2024

Christopher Kohls

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Mary Franson have personal knowledge of the matters alleged in the foregoing Verified Complaint concerning myself, my activities and my intentions. I verify under the penalty of perjury that the statements made therein are true and correct.

Executed on September <u>26</u>, 2024

Mary D Franson (Sep 26, 2024 22:56 EDT)

Mary Franson