## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Christopher Kohls and Mary Franson,

Plaintiffs,

v.

Keith Ellison, in his official capacity as
Attorney General of Minnesota, and
Chad Larson, in his official capacity as
County Attorney of Douglas County,

Defendants.

Civil File No. 24-cv-3754 (LMP/DLM)

**DEFENDANT DOUGLAS COUNTY ATTORNEY CHAD LARSON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiffs Christopher Kohls and Mary Franson request that this Court grant them a preliminarily injunction enjoining Defendants from enforcing Minnesota Statutes Section 609.771, which they claim infringes on their First Amendment speech rights. Such early relief is to be granted only in extraordinary circumstances to preserve the status quo while the parties litigate and only when the moving party establishes that the *Dataphase* factors have been met. Plaintiffs rely on irrelevant and overstated facts and misrepresentations of law to support their claimed entitlement to this extraordinary relief against the Douglas County Attorney Chad Larson, who had no role in developing Section 609.771 and has never in fact enforced or threatened to enforce the statute against anyone, much less the individual Plaintiffs. Because Plaintiffs have failed to identify any means by which Defendant Larson has caused harm to them or that Plaintiffs are likely to succeed on the

merits of their claims against Defendant Larson, Plaintiffs' claim for the extraordinary relief of a preliminary injunction must be denied.

## STATEMENT OF FACTS

While Plaintiffs' complaint exceeds 50 pages and their memorandum in support of their preliminary injunction motion exceeds 40 pages, there are very few facts relevant to their claims and requested relief against Defendant Larson, the Douglas County Attorney. Plaintiffs are an online political content creator – Kohls – whose content includes AI-generated depictions of political candidates making statements they have not made and a sitting Minnesota State Representative and candidate for reelection to that office – Franson – who lives in Douglas County and actively uses social media, sharing content like that created by Kohls. (Complaint (Doc. 1) (hereinafter "Compl.") ¶¶ 3-6, 8, 16.) Through this case, Plaintiffs are bringing a preemptive challenge to Minnesota Statutes Section 609.771, which they contend violates their First Amendment and Due Process rights, including by chilling their speech.

Section 609.771, originally enacted in 2023, prohibits the use of deep fake technology to influence an election. It defines deep fake technology as:

> any video recording, motion-picture film, sound recording, electronic image, or photograph, or any technological representation of speech or conduct substantially derivative thereof:
>
> (1) that is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct; and
>
> (2) the production of which was substantially dependent upon technical means, rather than the ability of another individual to physically or verbally impersonate such individual."

Minn. Stat. § 609.771, subd. 1(c). The statute imposes civil and criminal liability for individuals who disseminate deep fake material without the consent of the depicted individual, with intent to injure a candidate or influence the result of an election, and which takes place either within 90 days before a political party nominating convention, or after the start of the absentee voting period prior to a presidential nomination primary, or a regular or special state or local primary or general election. Minn. Stat. § 609.771, subd. 2. In amending the statute in 2024, the Legislature added a requirement that courts declare candidates that violate the law to have forfeited their nomination or office and that a candidate convicted of violating the statute is disqualified for appointment to that office or any office for which the legislature establishes qualifications, consistent with provisions in Minnesota Statutes Sections 211B.17 and .18. *Id.*, subd. 3. The attorney general, a county or city attorney, the individual depicted in the deep fake material, and any candidate for public office who is or may be injured by the dissemination of such content may maintain a cause of action for injunctive or equitable relief against those believed to have violated the statute. *Id.*, subd. 4.

Plaintiffs contend that, through their online political conduct, they are at risk of violating the provisions of the statute and thus incurring liability, including penalties for Plaintiff Franson that risk her candidacy for office. (*Id.* at ¶¶ 3-6.) Plaintiffs do not, however, allege that Defendant Larson has threatened or attempted to enforce the statute against them and barely mention him in the Complaint or their preliminary injunction motion papers. In fact, Defendant Larson has not enforced or threatened to enforce Section

609.771 against Plaintiffs or anyone else. (Declaration of Chad M. Larson ("Larson Decl.") ¶¶ 3-10.) It seems Plaintiffs have included Defendant Larson as a defendant in this case solely because he is the County Attorney of the county where Plaintiff Franson resides and is one – of many – individuals with the statutory authority to bring an enforcement action under Section 609.771. (Compl. ¶ 19.) As discussed below, Plaintiffs' arguments fail because they cannot meet their burden to show that preliminary injunction is warranted.

## ARGUMENT

A preliminary injunction is an "extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008). Because a preliminary injunction is a "drastic remedy," it should not be granted unless the plaintiff, "by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In the Eighth Circuit, courts analyze the four *Dataphase* factors to determine whether a preliminary injunction should be granted. These factors include: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112-13 (8th Cir. 1981).

Plaintiffs have the "complete burden" to prove that the *Dataphase* factors support the issuance of a preliminary injunction. *Geico Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see also Davis v. Francis Howell Sch. Dist.*, 104 F.3d 204, 205-06 (8th Cir. 1997) ("The party seeking the injunction has the burden of establishing these factors."). Stated another way, the burden of proof as to each of the four *Dataphase* factors falls on

Plaintiffs, and in order for preliminary injunctive relief to be issued, Plaintiffs must prove all four by clear and convincing evidence. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasizing that a preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion" and presents proof even more substantial than that required on a motion for summary judgment) (quotation omitted). Plaintiffs attempt to characterize the third *Dataphase* factor – the probability that the movant will succeed on the merits – as essentially dispositive. (Pls.' Memo. of Law in Support of Mot. for Prelim. Inj. (Doc. 11) (hereinafter "Pls. Br.") at 11-12.), but the law is clear that no single factor is determinative. *Dataphase Sys., Inc.*, 640 F.2d at 113. Moreover, in this case, Plaintiffs' burden is particularly "heavy" because "granting the preliminary injunction will give plaintiff[s] substantially the relief [they] would obtain after a trial on the merits." *Dakota Indus., Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991); *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023).

## I.    PLAINTIFFS CANNOT SHOW IRREPARABLE HARM SUFFICIENT TO SUPPORT THEIR MOTION FOR INJUNCTIVE RELIEF AGAINST DEFENDANT LARSON.

The cornerstone of any motion for injunctive relief "has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)). A party seeking injunctive relief must show that it will be irreparably harmed if the court does not issue the requested injunction. *Winter*, 555 U.S. at 22. Indeed, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citing

5

*Adam–Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996)); *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987). Put another way, "[o]nce a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted." *Gelco Corp.*, 811 F.2d at 420.

In support of their position that they have been irreparably harmed, Plaintiffs argue that "the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." (Pls.' Br. at 37.) (quoting *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). A September 2024 Eighth Circuit decision, however, casts doubt on this argument. In *Hotchkiss v. Cedar Rapids Community School District*, 115 F.4th 889 (8th Cir. 2024), the plaintiff alleged First Amendment retaliation and relied upon the same quoted language from *Elrod* about loss of First Amendment freedoms for even minimal periods of time that Plaintiffs now cite to in this case. *Id.* at 894. The Court of Appeals found the plaintiff in that case – like Plaintiffs here – "ignores the preceding sentence in the plurality opinion [from *Elrod*]: 'It is clear therefore that First Amendment interests were either threatened or in fact being impaired *at the time relief was sought*.'" (*Id.* at 894, quoting *Elrod*, 427 at 373) (emphasis in the original). In other words, the inquiry into the irreparable harm factor for purposes of this preliminary injunction motion is not, as Plaintiffs imply, consolidated with the inquiry into the likelihood of Plaintiffs' success on the merits and, instead, remains a standalone required showing to prevail on this motion.

Yet, Plaintiffs give short shrift to the irreparable harm factor in their preliminary injunction motion. Plaintiffs contend that the relevant irreparable harm is the chilling of their speech. (*See* Pls.' Br. at 37-38.) But, as addressed below, Plaintiffs speech has not been chilled as neither Plaintiff has been threatened with enforcement of Section 609.771 by Defendant Larson or any other individual nor has either reasonably demonstrated an actual impact on their speech flowing from Section 609.771. Put another way, Plaintiffs' First Amendment interests were neither threatened nor in fact being impaired at the time relief was sought through this litigation. *See Hotchkiss*, 115 F.4th at 894.

Moreover, notably absent from Plaintiffs' discussion of irreparable harm is any mention of Defendant Larson or a role he would play in causing them said harm, much less how granting an injunction against him would provide them the relief they seek. Plaintiffs' bald claims of irreparable harm are insufficient to support their motion for a preliminary injunction against Defendant Larson.

### A. Plaintiffs have not demonstrated a genuine threat of harm.

While Plaintiffs contend that the mere possibility of enforcement of Section 609.771 chills their speech, such a claim is belied by their own actions. Plaintiff Franson, as a sitting member of the Minnesota Legislature, has been well aware of the challenged statute since before it even became law, having voted in favor of the law in 2023 and against amendments to the statute in 2024. (*See, e.g.*, Compl. ¶¶ 44, 60). Yet, after the amendments to this statute went into effect on July 1, 2024, including those involving penalties for candidates found to have violated the statute, Franson engaged in conduct she believes violates – or at least exposes her to liability – under Section 609.771. (*See* Compl. ¶¶ 16,

7

33, 80.) In other words, despite her familiarity with Section 609.771, she has not refrained from disseminating deep fake content. Moreover, despite commencing this lawsuit premised on the alleged chilling of their speech, Plaintiff Kohls's deep fake video of presidential candidate Kamala Harris from July 27, 2024 remains posted and viewable in the state of Minnesota.[1] Plaintiffs' actions betray their claims to irreparable harm in the form of "chilled" speech.

### B. Plaintiffs have not shown they will suffer an actual and immediate harm without a preliminary injunction against Defendant Larson.

Even if the hypothetical chilling of Plaintiffs' speech were enough to establish harm to Plaintiffs from the challenged statute, Plaintiffs have not shown that they will suffer irreparable harm absent the requested preliminary injunction against Defendant Larson specifically. Again, though Plaintiffs' do not identify a particular harm attributable to Defendant Larson, in general, Plaintiffs' claims against Defendant Larson are seemingly premised solely on the fact that he is a County Attorney who could attempt to enforce Section 609.771.

To satisfy their burden on this motion, Plaintiffs must show that any irreparable harm they would suffer absent an injunction will be actual and immediate. *See Minnesota RFL Republican Farmer Labor Caucus v. Freeman*, 486 F. Supp. 3d 1300, 1310 (D. Minn.

---

[1] https://x.com/mrreaganusa/status/1816826660089733492?s=46; https://www.youtube.com/watch?v=sVspeqNnoWM. Moreover, Plaintiff Kohls later created a detailed video explaining his decision to use AI for the deepfake video and how he intertwined authentic video and audio clips with the deepfake clips. https://www.youtube.com/watch?v=l4tENBPcnu4&t=540s. He also noted that in light of California Governor Gavin Newsom threatening to create a law banning AI deepfake videos, "Well, screw this guy, I'm going to do another one." *Id.* at timestamp 21:12.

2020) (analyzing the irreparable harm prong of the *Dataphase* analysis and noting the heightened relevance to the fact there was an "absence of threatened, much less imminent, enforcement [of the challenged statute] by Defendants"). "Possible or speculative harm is not enough to justify a preliminary injunction." *Taxpayers' Choice Volunteer Committee v. Roseau Cnty. Bd. of Com'rs*, 903 F. Supp. 1301, 1308 (D. Minn. 1995) (quotation omitted). Defendant Larson's authority to enforce the statute alone is not enough to demonstrate that Plaintiffs will suffer irreparable harm absent injunctive relief against him.

In reality, Defendant Larson has never threatened to either civilly or criminally enforce Section 609.771 against anyone, including Plaintiffs. Larson Decl. ¶¶ 4-7. Defendant Larson has never prosecuted or threatened to prosecute anyone, including Plaintiffs, under Section 609.771. *Id.* ¶¶ 4, 6. Defendant Larson has never filed or threatened to file a civil complaint or seek injunctive or equitable relief against anyone, including Plaintiffs, under Section 609.771. *Id.* ¶¶ 5, 7. Defendant Larson is not currently investigating anyone, including Plaintiffs, for allegedly violating Section 609.771. *Id.* ¶ 8. And Defendant Larson is not about to commence any proceedings, either of a civil or criminal nature, to enforce Section 609.771 against anyone, including Plaintiffs. *Id.* ¶ 9. This is all true even despite Plaintiffs' verified complaint more or less attesting to their belief that they have, in fact, acted in violation of Section 609.771. In short, Plaintiffs cannot meet their burden for injunctive relief because the threat of any sort of action by Defendant Larson to enforce Section 609.771 is entirely speculative.

Plaintiffs' implied and speculative supposition that an exercise of County Attorney Larson's enforcement power could cause irreparable harm is not enough to satisfy the high

burden of showing "actual and immediate harm." *See Taxpayers' Choice Volunteer Committee* 903 F. Supp. at 1308. Without satisfying this factor to demonstrate entitlement to injunctive relief, the relief Plaintiffs presently seek in order to quell this speculated harm is impermissible. *Id.*; *see also Mainstream Fashions Franchising, Inc. v. All These Things, LLC*, 453 F. Supp. 3d 1167, 1202 (D. Minn. 2020).

### C. Plaintiffs have not shown that a preliminary injunction solely against one County Attorney in Minnesota mitigates any claimed irreparable harm or chilled speech.

Even if Plaintiffs could show an actual and immediate threat of irreparable harm attributable to Defendant Larson exists, Plaintiffs have not articulated how the injunctive relief sought would mitigate their alleged harm. Plaintiffs claim that they would like to disseminate deep fake content that would or may violate Section 609.771 and that this speech is chilled by the specter of possible civil or criminal proceedings that might be brought by Defendant Larson. Plaintiffs' apparent – though unarticulated – purpose for including Defendant Larson as a defendant in this matter is because Plaintiff Franson lives in Douglas County, where Defendant Larson serves, and county attorneys can bring criminal charges as contemplated by the challenged statute, in addition to pursuing civil enforcement. But Plaintiffs fail to articulate – or even imply – how enjoining statutory enforcement in only one of the 87 counties in Minnesota will mitigate any alleged irreparable harm, particularly given the nature of Plaintiffs' allegedly chilled speech.

Plaintiff Franson claims that she is chilled from sharing AI-generated content aimed at her political opponent in her house race, as well as other politicians in Minnesota and national races. (*See* Compl. ¶ 81.) While Franson may reside in Douglas County, the House

District she represents (12B) falls within three counties – Douglas, Pope, and Steans[2] – and there is nothing in the Section 609.771 that limits prosecutorial authority to the alleged offender's resident county. Further, Plaintiff Kohls appears most interested in producing AI-generated content related to national elections and has stated no particular connection to Minnesota, much less Douglas County, to suppose that he would avoid irreparable harm from enjoining this one County Attorney from enforcing the challenged statute.

In reality, even if Plaintiffs were able to obtain the injunction they seek, it is still possible for the other 86 county attorneys to prosecute Plaintiffs for violations of Section 609.771. Plaintiffs acknowledge as much in their arguments when they note that the "'enforcement officials' include . . . the county attorneys of Minnesota – who can bring criminal charges." (Pls.' Br. at 36.) Further, any city attorney, depicted individual, or candidate who is or likely to be injured by a deep fake disseminated by Plaintiffs would be able to pursue injunctive or equitable relief against Plaintiffs. To put a finer point on this, the court does not have the power to enjoin a statute itself, it only has the power to issue "an injunction . . . against the [parties] in the case." *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) ("A district court has no authority to enjoin the statute; an injunction would run only against the defendants in the case." (citing *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001)). Simply put, a preliminary injunction against a single County Attorney, even if it includes the Attorney General, will not mitigate any alleged irreparable harm (chilled speech) posed to Plaintiffs by Defendant Larson.

---

[2] https://www.sos.state.mn.us/election-administration-campaigns/data-maps/minnesota-legislative-maps/

Because the relief sought will not alleviate any alleged irreparable harm, Plaintiffs cannot demonstrate that they are entitled to injunctive relief. *Gelco*, 811 F.2d at 420; *see also Richards v. Dayton*, No. 13-3029, 2015 WL 1522204, at *12 (D. Minn. Jan. 30, 2015), *report and recommendation adopted sub nom. Richards v. Ritchie*, No. 13-3029, 2015 WL 1522237 (D. Minn. Mar. 30, 2015) (denying movant's request for preliminary injunction, in part, because movant named the "wrong defendants").

### D. Plaintiffs' Delay in Seeking a Preliminary Injunction Undermines Their Claim of Irreparable Harm.

Plaintiffs' delay in bringing this motion is fatal to their assertion of irreparable harm. Even if Plaintiffs had an objectively reasonable fear of prosecution or civil enforcement under the statute, their speech has been chilled because of that fear since this law went into effect on July 1, 2024, if not even earlier when Section 609.771 originally went into effect in 2023. Indeed, Plaintiff Franson knew about Section 609.771, specifically the amendments thereto, when the Legislature approved them in the spring of 2024 and as compared to her own use of social media. Yet she did nothing to challenge them until late September 2024. (*See* Compl. p. 51) (showing Franson signed the verification of the complaint on September 26, 2024).) Plaintiff Kohls may have acted somewhat more quickly between learning of the law and commencing the underlying case, yet Plaintiffs waited another two weeks to bring this motion for a preliminary injunction. (*See* Pls.'s Motion for Prelim. Inj. (Doc. 10) dated October 11, 2024.) While this series of events may seem reasonably prompt in other cases, Plaintiffs' actions must be viewed against the

backdrop of the election season, which is central to Plaintiffs' claims that their political speech is chilled.

"[I]t has . . . long been recognized that a plaintiff's delay in seeking relief may justify denying a request for injunctive relief because it belies claims of irreparable injury." *Tarek ibn Ziyad Acad. v. Islamic Relief USA*, 794 F. Supp. 2d 1044, 1059 (D. Minn. 2011) (citing *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999)). Plaintiffs' delay – particularly Plaintiff Franson's greater than three-month (if not in excess of one year) delay – in seeking injunctive relief illustrates that there is no actual or immediate harm that exists as to Defendant Larson. *See Grow Biz Int'l, Inc. v. MNO, Inc.*, No. 01-1805, 2002 WL 113849, at *8 (D. Minn. Jan. 25, 2002) (holding that a two and a half month delay rebuts a presumption of irreparable harm to movant); *see also Bergerson v. Deephaven Capital Mgmt., LLC*, No. 03-1090, 2003 WL 1824964, at *3 (D. Minn. Apr. 4, 2003) (finding that a three month delay negated movant's contention of threat of irreparable harm). This is particularly true given the fact that Plaintiffs delayed filing their request for a preliminary injunction until less than one month before the election. *Ng v. Bd. of Regents of Univ. of Minnesota*, 64 F.4th 992, 998 (8th Cir. 2023) (noting that the "determination of the reasonableness of a delay is context dependent").

Moreover, Plaintiffs' delay means that by the time the present motion is decided, any alleged threat of irreparable harm caused by Section 609.771, which Plaintiffs identify as the chilling of their speech, will have abated by operation of that statute. By its plain text, Section 609.771 applies only to the proscribed deep fake dissemination occurring either within 90 days before a political party nominating convention or after the start of an

absentee voting period. Minn. Stat. § 609.771, subd. 2(a)(3). As of the November 5, 2024

– Election Day – such periods will have passed and will not recur for some time. This

reality further demonstrates that the issuance of the preliminary injunction Plaintiffs seek

will not render relief from actual or immediate irreparable harm.

Because Plaintiffs have not and cannot demonstrate a threat of irreparable harm,

their motion for a preliminary injunction must properly be denied.

## II.    PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE BALANCE OF HARMS FAVORS GRANTING A PRELIMINARY INJUNCTION.

In considering Plaintiffs' motion for a preliminary injunction, the Court must also

consider whether the balance of harms – the balance between the irreparable injury an

injunction would avoid and the harm done to defendants by granting the injunction – favors

an injunction. *Dataphase Sys.*, 640 F.2d at 113. As noted above, Plaintiffs' motion is based

on their speculative allegations of irreparable harm, which are belied by their own actions,

including their delay in seeking injunctive relief. But even if the court assumes that

Plaintiffs' First Amendment rights are threatened by Defendant Larson's authority to

enforce Section 609.771, as noted above, any harm would not actually be remedied by

granting Plaintiffs an injunction against a single County Attorney when 86 others maintain

the right to enforce the statute, along with countless others.

In contrast, a preliminary injunction would harm Defendant Larson by enacting a

court-ordered infringement on the discretionary authority granted to him by the legislature.

*See Labnet Inc. v. U.S. Dep't of Labor*, 197 F. Supp. 3d 1159, 1176 (D. Minn. 2016)

(recognizing harm in enjoining enforcement power). This would put Defendant Larson in

a position where he does not hold the same discretionary authority as other elected officials in the exact same office, creating an imbalance of power among the county attorneys in the state. As such, the balance of harms weighs in favor of denying Plaintiffs' requested preliminary injunction.

## III.    PLAINTIFFS CANNOT SHOW THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS AGAINST DEFENDANT LARSON.

A party moving for a preliminary injunction cannot prove that it is likely to succeed on the merits of its claims if the non-moving party demonstrates that the moving party could not withstand a motion for summary judgment. *Mazurek*, 520 U.S. at 972 (emphasizing that the movant, by a clear showing, carries the burden of persuasion and must present proof even more substantial than that required on a motion for summary judgment). Indeed, the Supreme Court has held that to prevail on a preliminary injunction motion, the moving party not only carries the burden of persuasion, by a clear showing, but that the movant must show proof more substantial than that required on a motion for summary judgment. *Id.*

Further, parties seeking to preliminarily enjoin enforcement of a state statute must demonstrate that they are "likely to prevail on the merits." *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019). "This is in contrast to the 'fair chance' of success that is typically required." *Id.* The "more rigorous standard reflects the idea that governmental policies implemented through legislation . . . are entitled to a higher degree of deference and should not be enjoined lightly." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008) (internal quotation marks and citation omitted).

Here, Plaintiffs' claims fail on all fronts. Defendant Larson defers to Defendant Attorney General Keith Ellison's arguments as to the constitutionality of Section 609.771 and adopts them for purposes of this motion. Beyond failing on those grounds, Plaintiffs could not survive summary judgment, and therefore cannot prevail on this motion, against Defendant Larson specifically because Plaintiffs cannot satisfy the requirements of *Monell* to support their constitutional claim against Douglas County.

Plaintiffs assert their Section 1983 claim against Defendant Larson in his official capacity as the Douglas County Attorney. Official-capacity suits are "another way of pleading an action against an entity that employs an officer." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978)); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("[O]fficers sued for damages in their official capacity . . . assume the identity of the government that employs them.") (citation omitted)). Here, that entity is Douglas County. *See* Minn. Stat. §§ 382.01 (designating the county attorney as a county "officer"); 388.051, subd. 1 (enumerating duties that each county attorney owes their county and its staff as chief legal officer).

Not only does the law support the conclusion that Plaintiffs' constitutional official-capacity claims are stated against Douglas County itself, Plaintiffs' own conduct demonstrates their attempt to impose constitutional liability on Douglas County by way of Defendant Larson. Specifically, Plaintiffs effected service on Defendant Larson, in his official capacity as Douglas County Attorney, by personally serving the summons and

complaint on the Douglas County Auditor (Aff. of Service (Doc. 8) at p. 2),[3] which is consistent with the rules for personal service on a Minnesota county. *See* Fed. R. Civ. Pro. 4(j)(2)(B) (deferring to state law for service of a summons on a local government); Minn. R. Civ. Pro. 4.03(e)(1) (directing that service of a defendant county is completed by delivering a copy of the summons on the chair of the county board or the county auditor). Defendant Larson himself was never personally served. Larson Decl. ¶ 2. Moreover, Plaintiffs seek an award of nominal damages against Defendant Larson, but not Defendant Ellison. (*See* Compl. p. 48.) This is a clear acknowledgement that Plaintiffs are pursuing this claim against Douglas County specifically, which cannot escape a claim for damages under Eleventh Amendment immunity applicable to the state. *See Kentucky*, 473 U.S. at 169-70 (explaining that the Eleventh Amendment bars a damages action against state officials sued in their official capacity).

The fact that Plaintiffs are pursuing this constitutional claim against Douglas County by way of an official-capacity claim against Defendant Larson matters because "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. Rather, to prevail on their official-capacity claims against Defendant Larson, Plaintiffs must show that the County "caused the constitutional violation at issue." *Elder–Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (quotation omitted). "Thus, [the] first inquiry . . . is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S.

---

[3] Specifically, a deputy auditor authorized to accept service on behalf of the County.

378, 385 (1989); *see also Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36-37 (2010) (holding that *Monell*'s policy or custom requirement applies equally in Section 1983 cases seeking equitable relief only).

To prove the existence of a policy, plaintiffs must point to "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[O]nly those municipal officials who have final policymaking authority may by their actions subject the government to Section 1983 liability.") (internal quotation marks omitted)). Further, plaintiffs must "demonstrate that the policy itself is unconstitutional," *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 395 (8th Cir. 2007) (citations omitted), and that the policy is the "moving force" behind the violation of their constitutional rights. *Mettler*, 165 F.3d at 1204 (quoting *Monell*, 436 U.S. at 694).

Accordingly, to state a claim against Douglas County here, Plaintiffs must plead facts plausibly suggesting that: (1) the County has an unconstitutional policy, of which (2) Defendant Larson is the policymaker, and that (3) is the "moving force" behind the alleged violation of their First Amendment free speech rights. They have not and cannot make this showing.

### A. Plaintiffs' Section 1983 claims against Defendant Larson fail under *Monell* for want of an allegedly unconstitutional County policy.

As a threshold matter, Plaintiffs have not identified a Douglas County policy that they allege is unconstitutional or the "moving force" behind the alleged violation of their First

Amendment or Due Process rights. They have not even alleged that any such County policy exists or that Defendant Larson, acting in his role as a County official, engaged in policymaking that resulted in their alleged constitutional injury. (*See generally* Compl., Pls.' Br.) In fact, they say almost nothing about Defendant Larson at all, noting only that he is the County Attorney of the County where Plaintiff Franson resides and is the elected criminal prosecutor, with authority to take criminal or civil enforcement action under Section 609.771. (Compl. ¶ 19.) Across more than 90 pages, that is it.

The undisputed facts in this case are that Defendant Larson and his County employer do not have any policy related to dissemination of deep fake content, much less a policy that sets any sort of restriction on or proscribes enforcement mechanisms for disseminating such content. This alone would be sufficient to grant summary judgment, and thus to deny the Plaintiffs' motion for a preliminary injunction, in favor of Defendant Larson on the basis that Plaintiffs cannot prevail on the merits of their claim against him because they have failed to meet the requirements of *Monell* to impose liability under Section 1983 on Douglas County. *See, e.g.*, *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused a constitutional deprivation); *Calhoun v. Washington Cnty. Cmty. Servs. Child Support Unit*, No. 18-CV-1881 (ECT/HB), 2019 WL 2079834, at *5 (D. Minn. Apr. 23, 2019) (recommending dismissal of a Fourteenth Amendment claim where plaintiff did not identify a municipal policy or custom that caused his alleged constitutional injuries), *adopted by* 2019 WL 2075870 (D. Minn. May 10, 2019); *Udoh v. Minnesota Dep't of Human Servs.*, No. 16-CV-

3119 (PJS/SER), 2017 WL 9249426, at *7 (D. Minn. July 26, 2017) (dismissing *Monell* claim challenging constitutionality of state law, where plaintiffs failed to allege a municipal policy that violated their due process rights), *adopted by* 2017 WL 4005606 (D. Minn. Sept. 12, 2017), *aff'd* 735 Fed. App'x. 906 (8th Cir. 2018) (per curiam memorandum). Plaintiffs' failure to plead the existence of a policy or custom is fatal to their ability to succeed on their claims against Defendant Larson and thus fatal to their request for a preliminary injunction as it relates to Defendant Larson.

### B. Defendant Larson's statutory authority to enforce Section 609.771 is not a municipal policy for *Monell* purposes.

Instead of identifying a County policy underlying their alleged constitutional injury, Plaintiffs seek to impose Section 1983 liability on Douglas County based on state law alone. In other words, they seek to hold the County constitutionally liable – both for injunctive and monetary relief – because the state allows Defendant Larson to civilly or criminally enforce Section 609.771, even where he has never done so and he has absolutely no control over the law.[4] To the extent this court is willing to entertain whether this state law can be imputed to the County for *Monell* purposes given Plaintiffs' failure to otherwise identify a County policy allegedly underlying their Section 1983 claims against Defendant Larson, as set forth below, the Court should properly reject any such argument.

Neither the U.S. Supreme Court nor the Eighth Circuit has directly decided whether a municipality, like each County here, can be liable under *Monell* based solely on its

---

[4] This is in contrast to Plaintiff Franson, who was is a sitting legislator and voted in favor of this law in 2023, which contains substantially similar restrictions on dissemination of deep fake content as Section 609.771 presently does after 2024 amendments.

employee's act of enforcing an allegedly unconstitutional state law. *See Slaven v. Engstrom*, 710 F.3d 772, 781 n. 4 (8th Cir. 2013) ("Whether, and if so when, a municipality may be liable under Section 1983 for its enforcement of state law has been the subject of extensive debate in the circuits.") (citing *Vives v. City of New York*, 524 F.3d 346, 351-53 (2d Cir. 2008)); *Duhe v. City of Little Rock*, 902 F.3d 858, 863 n. 2 (8th Cir. 2018) (calling this "a thorny issue"). But the Supreme Court has been quite clear that "*Monell* is a case about responsibility," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 106 S. Ct. 1292, 1297, (1986), and there can be no doubt that responsibility for any alleged constitutional harm resulting from Section 609.771 does not fall on Douglas County or its County Attorney.

While *Monell* itself is specifically about the imposition of vicarious liability on municipal bodies in their role as an employer of a constitutional tortfeasor, the core tenet of *Monell* and its progeny is that municipalities should be held liable for only their own acts. Stated another way, *Monell* is meant to prevent municipalities from bearing responsibility for controlling the conduct or decisionmaking of others. *Id.* To constitute a "policy" for *Monell* purposes, the Supreme Court has stated that "'policy' generally implies a course of action consciously chosen from among various alternatives" and requires that the municipal policy itself have caused the alleged constitutional violation, rather than the alleged constitutional violation simply being the result of a general and otherwise constitutional "policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). The Court reiterated this position in *Pembaur*, holding "municipal liability under Section 1983 attaches where – and only where – a deliberate choice to follow a

21

course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. The Court has been quite clear that, "at the least," the requirements of *Monell* are "intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *Tuttle*, 471 U.S. at 821.

In this case, it was not a County policy that has allegedly violated or burdened Plaintiffs' constitutional rights, but rather state law. Section 609.771 itself proscribes the prohibited conduct, while naming county attorneys as one of the enforcing authorities. Neither Defendant Larson, nor his County employer, asked for or assigned themselves this authority through their own legislative process, decisionmaking, or otherwise. Being handed certain authority, without more, is the antithesis of "deliberate" or "conscious" choice and unequivocally establishes that Defendant Larson is not an "official[] responsible for establishing final policy with respect" to the challenged statute. As such, the U.S. Supreme Court instructs that there can be no finding of a County policy or custom in these circumstances as required to satisfy *Monell* and liability under Section 1983 does not attach to Defendant Larson or Douglas County.

Consistent with this, several Circuits agree that the authority to enforce state law and even acting to enforce it (which Defendant Larson has not done), without more, is not a municipal policy for *Monell* purposes. For example, in *Familias Unidas v. Briscoe*, the Fifth Circuit considered a challenge to a Texas statute authorizing county judges to demand public disclosure of organizations' memberships on the basis that this law violated First

22

Amendment free association rights. 619 F.2d 391, 394-96 (5th Cir. 1980). The plaintiff in that case sued a county judge, in the judge's official capacity, who applied this law to the plaintiff and asked the court to declare the law facially unconstitutional. *Id.* The Fifth Circuit found that the plaintiff had not satisfied the requirements of *Monell* to hold the county liable for the county judge's application of the disclosure statute. *Id.* at 404. In reaching this conclusion, the court explained that the judge's duty to implement the challenged statute, "much like that of a county sheriff in enforcing state law, may more fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute" and was not attributable to the county. *Id.*

Similarly, in *Surplus Store & Exchange, Inc. v. City of Delphi*, the Seventh Circuit was faced with a claim by a pawn shop alleging that a city police officer violated its constitutional right to due process by seizing rings pursuant to Indiana statutes without first holding a hearing. 928 F.2d 788, 790 (7th Cir. 1991). In an attempt to comply with the requirements of *Monell*, the pawn shop argued that the city's "decision simply to enforce" the allegedly unconstitutional state statutes constituted a municipal policy causing its constitutional injury. *Id.* at 791. Consistent with the Supreme Court's discussions in *Tuttle* and *Pembaur*, the Seventh Circuit rejected this argument out of hand, explaining:

> It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the "policy" of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality.

*Id.* at 791-92. The court further rejected the argument that a city has adopted state law, thereby establishing a policy, by not simply ignoring the law, explaining this "would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors – here, the [state] legislature." *Id.* at 791 n.4. Instead, the court stated that to hold the city liable under Section 1983, a policy or custom actually attributable to the city had to have caused the violation, meaning the fault for the constitutional deprivation had to lie with the city itself, not an employee or a state statute. *Id.* at 793.

Piggybacking off of this, in *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, the Seventh Circuit refused to subject a county to Section 1983 liability for following state law, explaining that "[w]hen the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." 154 F.3d 716, 718 (7th Cir. 1998). It explained that this position "has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government." *Id.*

The Fourth and Tenth Circuits have also reached the conclusion that a municipality's compliance with a state-established policy is insufficient to satisfy *Monell* to establish Section 1983 liability against the municipality. In *Brockes v. Fields*, the Fourth Circuit held that a county social services board did not act in a policy-making capacity when it fired the plaintiff in accordance with a comprehensive personnel handbook issued by the state social services board that county boards were required to follow. 999 F.2d 788, 791 (4th Cir.

1993). The court reasoned that even though the county board "enjoyed its discretion" to terminate the employee, it did so "at the prerogative of and within the constraints imposed by" the state and "[s]uch bounded, state-conferred discretion" did not constitute policymaking authority sufficient to confer liability under Section 1983. *Id.* The Tenth Circuit similarly "emphasize[d]" that a municipal board cannot be liable under Section 1983 "for merely implementing a policy created by the state," but rather must be "the moving force" behind the action allegedly causing a constitutional injury. *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000).

In addressing this question of whether state law can be imputed to a municipality for purposes of Section 1983 liability, the Second Circuit provided an analysis of how its sister circuits had addressed this question. *See Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008). In doing so, the Second Circuit held that for *Monell* liability to attach, a municipality policymaker must "have focused on the particular statute in question" and "there must have been conscious decision making by the [municipality's] policymakers" regarding how to enforce the statute. 524 F.3d at 353. In other words, a municipality must "put flesh on the bones" of an allegedly unconstitutional statute by, for example, "instruct[ing] officers that they could make arrests for constitutionally protected conduct." *Id.* at 356. Thus, a "conscious choice to enforce [a] statute in an unconstitutional manner" can constitute a cognizable Monell policy. *Id.*

The court explained that while other circuits – namely the Sixth, Ninth, and Eleventh – had addressed this issue differently, "in each case the policymaker was alleged to have gone beyond merely enforcing the state statute." *Id.* at 351; *accord Garner v. Memphis*

*Police Dep't*, 8 F.3d 358, 364-65 (6th Cir. 1993) (finding *Monell* policy where city policymakers made a deliberate choice to allow the use of deadly force and identify circumstances warranting such use, because the use of force, while authorized, was not required under state law); *Cooper v. Dillon*, 403 F.3d 1208, 1221-23 (11th Cir. 2005) (finding *Monell* policy where municipality enacted an ordinance prohibiting all crimes proscribed by state law and took action to enforce an unconstitutional law under this ordinance where enforcement was not required under state law); *Evers v. Custer County*, 745 F.2d 1196, 1198 (9th Cir. 1984) (finding *Monell* policy where county board issued a declaration that road was public and instigated criminal action, even though state law allowed the county to make such a declaration). In other words, these cases can be harmonized as standing for the proposition that enforcing a state law is not a *Monell* policy unless a municipal policymaker consciously chooses to enforce the law unconstitutionally. *Cf. City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."); *Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999) ("[W]hen a county is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the Monell line of cases.") (citations omitted).

In essence, to the extent that other Circuits have addressed the question of whether a plaintiff can rest on state law to satisfy the *Monell* requirements when raising a Section 1983 claim against a municipality, the short and unequivocal answer is no. This is wholly consistent with the Supreme Court's *Monell* analysis and decree that there can be no municipal liability under Section 1983 absent actual, intentional policymaking by the

municipality itself. *See Tuttle*, 471 U.S. at 823; *Pembaur*, 475 U.S. at 483. *Monell* is satisfied if, and only if, the municipality goes beyond merely enforcing or complying with a state law by putting "flesh on the bones" of the statute, *see Vives*, 524 F.3d at 324, by adding to its plain language in some way. This has not happened here – there is no dispute on this point.

As addressed above, unlike Plaintiff Franson, the County and Defendant Larson had no role in enacting Section 609.771. Moreover, Defendant Larson has taken no enforcement action under that law, or even considered it. Defendant Larson has not, in fact, exercised any conscious or deliberate choice as it relates to Plaintiffs' alleged constitutional injuries – the purported chilling of their speech – by the way he has engaged with Section 609.771. To be sure, having never acted on the authority it affords him, Defendant Larson certainly has not undertaken to supplement or go beyond the requirements of that state law.

Because the law clearly bars Plaintiffs from relying on Section 609.771 alone to establish *Monell* liability against Defendant Larson, it thus follows that Plaintiffs cannot prevail on the merits of their claims against him to impose constitutional liability on Douglas County. The find otherwise, thereby requiring Defendant Larson and his County employer to serve as "convenient receptacles of liability for violations caused entirely by" the state, *Surplus Store*, 928 F.2d at 791 n. 4, would pit these local governments against the state government and undermine *Monell*'s central holding that municipalities should be liable under Section 1983 for only their own alleged constitutional wrongs.

### C. The alleged threat of harm is not caused by a Douglas County policy.

The lack of a cognizable *Monell* policy notwithstanding, Plaintiffs also cannot establish that any County policy is the "moving force" behind the harm they supposedly have suffered or stand to suffer. Part and parcel of Plaintiffs' contention that the restrictions imposed by Section 609.771 are irredeemably unconstitutional is the unavoidable conclusion that the statute itself is the sole cause of their alleged constitutional injury. *See, e.g.*, *N.N. ex re. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 941 (W.D. Wis. 2009) (noting that when a plaintiff cannot "point to a separate policy choice made by the municipality . . . it is the policy contained in [the challenged] law, rather than anything devised or adopted by the municipality, that is responsible for the injury" (quotations and citation omitted)); *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014) ("To say that [a] direct causal link exists when the only local government 'policy' at issue is general compliance with the dictates of state law is a bridge too far; under those circumstances, the state law is the proximate cause of the plaintiff's injury.") (citations omitted); *see also Calhoun*, 2019 WL 2079834, at *5 (finding that "any alleged violation of Plaintiff's due process rights … was the result of action undertaken by an entity separate and distinct from Washington County").

Even if Plaintiffs had or could identify a viable Douglas County policy to satisfy *Monell*, their official-capacity claims against Defendant Larson nevertheless fail for want of causation. Unless the test set out in *Monell* is to "become dead letter," *Tuttle*, 471 U.S. at 823, and municipalities are to be held vicariously (and strictly) liable based solely on their employees' legislatively-conferred authority to enforce an allegedly unconstitutional

state law, this Court should deny Plaintiffs' motion for a preliminary injunction against Defendant Larson. Simply put, Plaintiffs have not carried their burden of making a clear showing that they are likely to prevail on the merits of their claims against Defendant Larson.

## IV.  PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE PUBLIC INTEREST FAVORS GRANTING A PRELIMINARY INJUNCTION.

The public interest is not served by granting an extraordinary remedy to a party when litigation is pending and the movant has not made the appropriate showing of irreparable harm or a likelihood of success on the merits. *Winter*, 555 U.S. at 24. Plaintiffs have not demonstrated how their First Amendment or Due Process rights will be further protected by the granting of injunctive relief against Defendant Larson who has done nothing to abridge those rights. Moreover, Plaintiffs have not demonstrated that there is an actual and immediate risk of harm to them as to Defendant Larson, particularly where such relief is sought just after the close of the 2024 election cycle. Further, Plaintiffs have not shown that there is a likelihood of their success on the merits because they have not established a County policy sufficient to maintain Section 1983 claims against Douglas County. For these reasons, Plaintiffs' motion should be denied.

## CONCLUSION

For the reasons set forth above, Defendant Larson respectfully requests that the Court deny Plaintiffs' request for a preliminary injunction against him.

**SQUIRES, WALDSPURGER & MACE, P.A.**

Dated: November 1, 2024

/s/ Kristin C. Nierengarten
Kristin C. Nierengarten (#395224)
Zachary J. Cronen (#397420)
333 South Seventh Street, Suite 2800
Minneapolis, MN 55402
Phone: (612) 436-4300
Fax: (612) 436-4340
Email: kristin.nierengarten@raswlaw.com
        zachary.cronen@raswlaw.com

**ATTORNEYS FOR DEFENDANT CHAD LARSON**