# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTOPHER KOHLS and MARY FRANSON,<br><br>                                               *Plaintiffs*,<br><br>v.<br><br>KEITH ELLISON, in his official capacity as Attorney General of Minnesota, and CHAD LARSON, in his official capacity as County Attorney of Douglas County,<br><br>                                               *Defendants*. | Court File No. 0:24-cv-3754- LMP-DLM<br><br>**PLAINTIFFS' RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO KEITH ELLISON'S MOTION FOR LEAVE TO FILE AMENDED EXPERT DECLARATION** |

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... 2

Introduction .................................................................................................................... 3

Background .................................................................................................................... 4

Argument ....................................................................................................................... 5

I.    The Proffered Declaration is untimely. ................................................................ 5

    A.  Ellison's belated "correction" prejudices Plaintiffs. ..................................... 6

    B.  Ellison's inexcusable delay. ......................................................................... 10

    C.  Ellison demonstrates bad faith in continued reliance on a declaration with "significant" errors. ........................................................................... 12

Conclusion ................................................................................................................... 15

## INTRODUCTION

Defendant Keith Ellison admits that the Prof. Hancock's Nov. 1 declaration contains "significant" errors. Mem. Supporting Mot. for Leave to File Amended Expert Decl. ("Mem."), Dkt. 37 at 5. Ellison admits it contains wholly fabricated citations to imaginary journal articles generated by Prof. Hancock's previously-undisclosed use of artificial intelligence (AI) in drafting it. Despite counsel's duty of candor to the Court, *Ellison has not withdrawn the declaration*. Instead, he seeks to amend it twenty-six days out of time.

The unexplained failure of both Prof. Hancock and Ellison to review the declaration when it was due on November 1, and which the former signed under penalty of perjury, does not constitute "excusable neglect."

Ellison argues otherwise, attaching a new declaration by Prof. Hancock purporting to explain how a declaration he claims to have "extensively" edited came to contain fake citations to nonexistent journal articles dreamed up by an AI chatbot. Nov. 21 Hancock Decl., Dkt. 39, ¶ 13. This contention is self-refuting.

Ellison's motion and declarations do not evince excusable neglect; they provide further reasons for the Court to—at a minimum—exclude the declaration entirely.

## BACKGROUND

On October 11, Plaintiffs moved for preliminary injunction against Minn. Stat. § 609.771, which by its plain language criminalizes "realistic" AI-generated videos of political candidates intended to alter the result of an election (that is, persuade voters). Dkt. 11 at 15-16.

The Court ordered Defendants to respond on November 1. Dkt. 14. While a First Amendment pre-enforcement challenge is largely a matter of law, and although no discovery has occurred, Ellison filed his response accompanied by the November 1 Hancock Declaration. The declaration includes citations to two journal articles that do not exist, and that Prof. Hancock admits were likely "hallucinated" by ChatGPT-o4, an AI chatbot he used to help draft his declaration. Nov. 21 Hancock Decl. ¶¶ 11-13. In their opposition to preliminary injunction, Ellison claimed that the declaration shows that "counterspeech is insufficient to combat the unique harms that deepfakes inflict." Dkt. 19 at 34.

Plaintiffs filed their reply as scheduled on November 15, and demonstrated the continuing vitality of counterspeech against AI fakery by moving to exclude the partially-fabricated Hancock declaration under FRE 702 and *Daubert*. Dkt. 29.

On November 27, Ellison moved to file an "amended" Hancock declaration out of time, which substitutes the hallucinated journal citations for ones that

4

actually exist. Ellison claims the motion was diligent because neither his office nor Hancock knew that the declaration filed by him under Hancock's oath contained fabrications until opposing counsel flagged them. Mem. 7. Ellison also claims good faith (*id.*), but to this date has not withdrawn the declaration he admits contains "significant" errors. *Id.* at 5.

Counsel for Larson further advised the undersigned that he "will not be actively participating in the *Daubert* motion."

## ARGUMENT

### I. The Proffered Declaration is untimely.

The opposition for preliminary injunction was due November 1, so Ellison must have "excusable neglect" under Rule 6(b) to overcome the almost four-week delay in submitting a replacement. "Excusable neglect" is an equitable question, and "the following factors are particularly important: (1) the possibility of prejudice to [Plaintiffs]; (2) the length of [Ellison's] delay and the possible impact of that delay on judicial proceedings; (3) [Ellison's] reasons for delay, including whether the delay was within [his] reasonable control; and (4) whether [Ellison] acted in good faith." *Sugarbaker v. SSM Health Care*, 187 F.3d 853, 856 (8th Cir. 1999).

All of these factors militate against the untimely filing, which is at heart an effort to prejudice Plaintiffs by attempting to deflect their motion to exclude.

5

Ellison does not even articulate a reason for the delay other than his failure to examine papers his own office filed with the court. Good faith is belied by his failure to withdraw the declaration even now, and by the 12-day delay to even respond to evidence of the fabrication.

### A.     Ellison's belated "correction" prejudices Plaintiffs.

Ellison admits that the Nov. 1 Hancock Declaration contains fabrications. He admits these fabrications were caused because Prof. Hancock researched and drafted the declaration using an AI chatbot widely known to fabricate answers in response to queries.[1] Plaintiffs would be prejudiced by the Court's consideration of a partially AI-generated and untimely filing to resolve their motion for preliminary injunction. Plaintiffs are independently prejudiced due to their inability to seek discovery at this time.

---

[1] *See* Goddard, J, *Hallucinations in ChatGPT: A Cautionary Tale for Biomedical Researchers* (2023), AM. JOURNAL OF MED., 136(11), 1059-1060 ("physicians and biomedical researchers should NOT ask ChatGPT for sources, references, or citations on a particular topic."), Dkt. 31-4. Prof. Hancock himself observed that the best Large Language Models (like ChatGPT) "produce useful information that's accurate 50% or 70% of the time, though that will likely change with new versions like the imminent GPT4. They can also produce falsehoods or make stuff up – what we call 'hallucinating'. It can take a lot of work to actually get them to produce something good." Melissa De Witte, *How will ChatGPT change the way we think and work? Stanford scholar examines*, STANFORDREPORT (Feb. 13, 2023), https://news.stanford.edu/stories/2023/02/will-chatgpt-change-way-think-work.

Ellison argues that Plaintiffs suffer no prejudice because the "substance of the declaration will not change" (Mot. 5), but this is untrue. The entire purpose of their motion is to replace the declaration's substantive citations to fabrications. Ellison and Prof. Hancock implausibly claim the new citations support propositions previously attributed to hallucinations.[2] Ellison apparently hopes to partially rebut Plaintiffs' motion to exclude through these substantive changes.

Ellison cites cases where declarations were replaced to avoid disputes about verification—not alter the underlying content. *In Frontczak v. City of Detroit*, the declarations were *identical* except "one difference": that "the new versions all bear the declarant's signature in wet ink" in order to avoid a party's argument that electronic signatures were invalid under Michigan law. No. 18-cv-13781, 2021 WL 1526279, 2021 U.S. Dist. LEXIS 74253, *4-*5 (E.D. Mich. April 19, 2021). Likewise,

---

[2] Hancock now cites his own editorial in support of his November 1 declaration's claim that "deepfake videos are more likely to be believed than text-based misinformation because they engage multiple senses simultaneously, creating a stronger illusion of authenticity." Nov. 27 Hancock Decl. ¶ 19. In fact, the cited editorial says: "Studies have shown that deception detection is approximately the same whether the message is conveyed through text (e.g., a court transcript, an Internet chat log), an audio recording (e.g., a voicemail, a radio program), or a video (e.g., an interrogation video)." Dkt. 31-5. The editorial speculates that the "impact of deception by deepfake [videos] has the potential to be greater than that of verbal deception." *Id*. This does not support the proposition that "deepfakes" are more misleading than "text-based" misinformation.

in *Lamoureux v. AnazaoHealth Corp.*, the substituted declarations were identical except sworn under penalty of "perjury" instead of the original jurat: "[s]ubscribed under penalties of false statement." No. 3:03-cv-01382, 2010 WL 3801611, 2010 U.S. Dist. LEXIS 99454, at *5 (D. Conn. Sep. 22, 2010). These aren't substantive changes. In both cases, the courts recounted arguments that the declarations may have been adequate as originally filed. *Id.* at *8; *Frontczak*, 2021 U.S. Dist. LEXIS 74253, *6.

In contrast, the revised Hancock declaration contains different *content* to replace admittedly fabricated material that Prof. Hancock endorsed under penalty of perjury. The proposed amendment is "an effort to add new substance to the declaration to counter the legal arguments" raised by Plaintiffs—namely in their motion to exclude. *Travelers Pers. Sec. Ins. Co. v. Johnston*, No. 6:16-cv-00011, 2017 WL 1337305, 2017 U.S. Dist. LEXIS 55071, at *23 (W.D. Va. Apr. 11, 2017). This conduct necessarily prejudices Plaintiffs, who responded to the original evidence. "Should the Court permit the amended declaration, [Plaintiffs] would need to file a revised [motion to strike] addressing the new contentions." *Id.* at *22.

The lack of discovery is especially problematic given the revelations contained in the Nov. 27 Hancock Declaration, which only raise further questions about Prof. Hancock's "workflow." For example, Hancock reports using

8

ChatGPT-o4 to summarize relevant articles, apparently including articles he has not read before Nov. 27 Hancock Decl. ¶¶ 8-9 ("I am already familiar with *many* of these articles" (emphasis added)). Why on earth would he do this given ChatGPT's tendency to simply invent things it cannot find within its training data?[3] This is especially perilous because he reports using it to "refresh for the most recent scholarship"—that is, works that ChatGPT is least likely to know about.

Based on his described workflow, Prof. Hancock used ChatGPT to write the first draft of his declaration, which was "cut and pasted them from the online tool into my MS Word declaration." Nov. 27 Hancock Decl. ¶ 13. He represents "I then edited my declaration extensively." *Id*. This simply raises a question ripe for discovery. Why, during his "extensive" editing, did Prof. Hancock not notice citations he could not have known about because they don't exist? What other material was fabricated by AI rather than his self-described expertise in AI?

---

[3] A well-known tech reporter opines "the big mistake here was in asking the LLM to 'draft a short paragraph.' I can't see any good reason for that to have been used in this way," which he finds "completely unacceptable for someone submitting a declaration" given AI's tendency to invent things it does not know. Mike Masnick, *Professor Apologizes For Using Fake AI-Generated Citations In Defense of Minnesota's Unconstitutional Deepfake Law*, TECHDIRT (Dec. 2, 2024), https://www.techdirt.com/2024/12/02/professor-apologizes-for-using-fake-ai-generated-citations-in-defense-of-minnesotas-unconstitutional-deepfake-law/.

Prof. Hancock also reports "I cannot remember exactly what I wrote" into ChatGPT to draft his declaration (*Id*. ¶ 8), but there's no reason for him to rely on his memory. ChatGPT retains logs of questions and answers from previous sessions.[4] These logs would demonstrate exactly what queries were used and exactly how "extensively" (*id.* at ¶ 13) Hancock edited the AI-generated output. The undersigned asked Ellison to instruct Hancock to preserve these logs, and received this reply: "I conveyed your retention instruction to Professor Hancock's counsel." The existence of an intermediary counsel suggests that all individuals before this Court recognize the conflict of interest between Prof. Hancock and General Ellison, which might explain the prejudicial lack of candor in the November 27 Hancock Declaration, but does not excuse it.

B.     **Ellison's inexcusable delay.**

Ellison asserts that his motion can be heard along with Plaintiffs' motions, but he does not explain, yet alone excuse, the delay. The delay in confirming the fabrication is difficult enough to excuse. Non-party law Professor Eugene Volokh was able to review and verify the error eight days before Ellison deigned to inform

---

[4] OpenAI, *How do I search my chat history in ChatGPT?*, https://help.openai.com/en/articles/10056348-how-do-i-search-my-chat-history-in-chatgpt.

the Court.[5] For this reason, the Court should find Ellison's assertion to have "acted as promptly as possible to address the issue" not credible. Mem. 7. The relevant delay is longer in any event.

Ellison offers no reason at all he could not have filed the "corrected" declaration on the Court's November 1 deadline. He says only that "the Attorney General's office did not know that the declaration contained AI-hallucinated citations" and it "relied on Professor Hancock to draft the substance of the expert declaration and to identify the academic and other literature that supported his declaration." Mem. 3, 7. But these were always within the control of and discoverable by Ellison's attorneys. The undersigned discovered it, as did Prof. Volokh. Ellison provides no reason whatsoever he could not have prepared accurate filings when they were due.

It does not matter that, in Ellison's view, removing fraudulent citations does not alter the "substance" of the declaration. A court may refuse to consider an "almost verbatim" declaration that simply cites additional records when the party "could have" timely submitted the records. *In re Rodriguez*, 421 B.R. 356, 363-64

---

[5] Eugene Volokh, *Apparent AI Hallucinations in AI Misinformation Expert's Court Filing Supporting Anti-AI-Misinformation Law*, REASON.COM (Nov. 19, 2024), https://reason.com/volokh/2024/11/19/apparent-ai-hallucinations-in-misinformation-experts-court-filing-supporting-anti-ai-misinformation-law/.

11

(Bankr. S.D. Tex. 2009) (finding no excusable neglect for untimely declaration that includes business records that were always available to the moving party).

### C. Ellison demonstrates bad faith in continued reliance on a declaration with "significant" errors.

Ellison argues entitlement to relief because of his "good faith" in relying on Prof. Hancock and because he "did not in any way intend to mislead the Court or counsel by filing Professor Hancock's declaration." Mem. 7. Ellison says he "has a duty to correct the record now that it knows about the errors." *Id*. Putting aside the lack of diligence in acting 12 days after Plaintiffs flagged the error, **Ellison has *still* not withdrawn the filing**. He *admits* it includes AI-generated hallucinations, but does not withdraw it. Presumably, Ellison will urge that the Court rely on the report even if it soundly denies his motion to file an amended version.

Plaintiffs find this course preposterous, but ironically emblematic of the underlying censorship that Minnesota hopes to enforce. Prof. Hancock describes drafting a declaration he "stand[s] firmly behind," viewing citations as mere ornamentation, with the substance of unfamiliar articles described to him by an algorithm he did not create, and prose written from outlines of propositions of his unassailable "opinion as an expert." Nov. 27 Hancock Decl. ¶¶ 1, 3, 8, 11.

12

Ellison endorses this presentation, and urges reliance on the declaration, but simply wants the Court to substitute a version slightly less fabricated. (Admittedly still fabricated in part, just not verifiably fictional as before.)

The course suggested by Ellison illustrates the core problem with efforts to regulate speech by criminalizing it. Governments will find lies cut from whole cloth permissible when the state deems the "substance" to be truthful—"fake but accurate" as was infamously said about forgeries that ended a journalist's career.[6] *See also* Plaintiffs' Memorandum in Support of Preliminary Injunction at 33-34 (highlighting legislative debate about whether "misleading[]" edits would violate the law). State-approved lies often come from superficially prestigious sources touting their publications in "high impact" journals while delivering courts and politicians with their preferred opinions dressed in a pseudoscientific veneer. Meanwhile, Minnesota's law targets everyday Americans' political speech and parodists, threatening prison time for lies that Ellison might not consider "fake but accurate."

---

[6] Maureen Balleza and Kate Zernike, *NATIONAL GUARD; Memos on Bush Are Fake But Accurate, Typist Says*, NEW YORK TIMES (Sep. 15, 2004), https://www.nytimes.com/2004/09/15/us/the-2004-campaign-national-guard-memos-on-bush-are-fake-but-accurate.html.

To the extent Ellison's good faith depends on his reliance of Prof. Hancock, he now knows this to be terribly misplaced. Insisting on further reliance does not demonstrate good faith. While Prof. Hancock declares that "I wrote and reviewed the substance of the declaration" and "edited my declaration extensively" (Nov. 27 Hancock Decl. ¶¶ 1, 13), Ellison must know his expert is using non-standard definitions of these words. A careful review would have revealed journal articles that Prof. Hancock had never heard of before, especially because he touts his expertise and familiarity with research in this field. The fact he did *not* proves a less-than-rigorous review.

Perhaps Prof. Hancock was engaged in what he has called "AI-Mediated Communication." If so, he has suggested that such hybrid communication should be ethically disclosed.[7] If Ellison was blindsided by Prof. Hancock's use of AI writing, it provides an independent reason that Ellison cannot delegate good faith to his expert. Alternatively, if Ellison knew about Prof. Hancock's AI-assisted "workflow," he should have disclosed it to the Court (and reviewed it more carefully than he apparently did). *Cf. Matter of Weber*, 2024 NY Slip Op. 24258, ¶ 13

---

[7] Jeffrey T. Hancock, Mor Naaman, Karen Levy, *AI-Mediated Communication: Definition, Research Agenda, and Ethical Considerations*, JOURNAL OF COMPUTER-MEDIATED COMMUNICATION, Volume 25, Issue 1, January 2020, Pp. 89-100, https://doi.org/10.1093/jcmc/zmz022.

14

(Saratoga Co. N.Y. Sur. Ct. Oct. 10, 2024) ("due to the nature of the rapid evolution of artificial intelligence and its inherent reliability issues … counsel has an affirmative duty to disclose the use of artificial intelligence and the evidence sought to be admitted should properly be subject to a *Frye* hearing prior to its admission").[8]

Ellison's effort to deflect Plaintiffs' motion to exclude should be denied.

## CONCLUSION

The Court should deny the untimely and unfounded motion for leave to file amended expert declaration.

---

[8] The Memo and accompanying Farrell declaration say only that Ellison was "unaware of the possibility that Professor Hancock's declaration cited non-existent articles." Mem. 2; *compare* Dkt. 38 ¶ 4. Plaintiffs suspect that Ellison did not agree to pay an expert $600/hour knowing that he would delegate work to an online chatbot, but the record is not conclusive about the Attorney General Office's knowledge.

Dated: December 4, 2024          Respectfully submitted,

/s/ *M. Frank Bednarz*
Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
Alexandra K. Howell (#0504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Drive, Suite 140
Minnetonka, MN 55343
Voice: 612-428-7000
Email: Doug.Seaton@umlc.org
James.Dickey@umlc.org
Allie.Howell@umlc.org

M. Frank Bednarz (*pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
1440 W. Taylor St. # 1487
Chicago, IL 60607
Voice: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Plaintiffs Christopher Kohls and Mary Franson*