# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

CHRISTOPHER KOHLS and MARY FRANSON,

          *Plaintiffs*,

v.

KEITH ELLISON, in his official capacity as Attorney General of Minnesota, and CHAD LARSON, in his official capacity as County Attorney of Douglas County,

          *Defendants*.

Court File No. 0:24-cv-3754- LMP-DLM

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE**

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................... 2

Introduction ................................................................................................................... 3

I.   Rule 702 applies at all stages of litigation. .......................................................... 4

II.  The errors in Prof. Hancock's declaration go to the heart of its reliability. ...... 8

III. Contrary to Ellison, the declarations purport to find facts relevant to the
     case, not mere "background." .............................................................................. 9

IV.  Ellison's argument contradicts well-settled First Amendment law. ............... 11

Conclusion ................................................................................................................... 12

## INTRODUCTION

Ellison admits that "the Hancock declaration, a report submitted by an expert on 'misinformation and deepfakes'…, **cites a study that does not exist**." Plaintiffs' Mem. in Support of Daubert Motion ("Mot."), Dkt. 30 at 3. Ellison also admits that the Nov. 1 declaration contains "AI-hallucinated citations" fabricated through Prof. Hancock's use of an AI language model that Hancock did not create. Ellison's Response to Motion to Exclude ("Resp."), Dkt. 43 at 1. Ellison further represents that if the Court denies his motion for leave to file a substitute declaration out of time (Dkt. 34), he "has no objection to the Court's exclusion of the original declaration." *Id.* at 2 & n.1.

Nevertheless, Ellison urges the Court to rely on a declaration which Hancock *admits* was *drafted* using ChatGPT, "cut and pasted… into my MS Word declaration." Nov. 27 Hancock Decl., Dkt. 39, ¶13. While Hancock says he "extensively" edited the AI-generated text (*id.*), this claim is self-refuting because Prof. Hancock, an expert in this field, did not notice two entirely fictitious citations. *See* Plaintiffs Opp. to Mot. for Leave to File ("Opp. to Leave"), Dkt. 42 at 9, 14-15. These admissions strengthen Plaintiffs' motion to exclude the entire report.

Simply put, **ChatGPT is not an expert**. It is a "large language model" prone to fabrication. Ellison does not attempt to qualify ChatGPT as an expert.

3

Nor, in any event, are the conclusory opinions helpful to the Court. Prof. Hancock's Nov. 27 declaration makes clear he views factual citations as akin to ornaments on a Christmas tree: interchangeable flourishes adorning steadfast and essentially political opinions. The tree itself is rotten and must be discarded.

Ellison cannot deny Plaintiffs' observation that the conclusory opinions lack any methodology whatsoever. Mot. 10. Instead, Ellison argues that experts do not require methodology when offered for "basic background information." Resp. 2. But he does not introduce the declarations for mere background. Ellison's own filing concedes this when he asserts that the efficacy of counterspeech is a "question of fact," upon which he asserts the experts opine. *Id.* at 14. The experts' unsupported conclusions cannot survive *Daubert* scrutiny due to their undisputed lack of methodology.

## I.     Rule 702 applies at all stages of litigation.

Federal Rule of Evidence 101 requires the application of the Rules in "proceedings in United States courts … with exceptions [] set out in Rule 1101." Fed. R. Evid. 101(a). Rule 1101(b) states that the Federal Rules of Evidence "apply in … civil cases and proceedings." Fed. R. Evid. 1101(b). Rule 1101(d) then lists specific exceptions for the Rules' application: for example, grand-jury and extradition proceedings. Fed. R. Evid. 1101(d).

None of those exceptions apply here. The parties do not ask the Court to decide a preliminary question on whether evidence should be relied upon at some future proceeding—the sole civil Rule 1101(d) exception. Instead, the Court must adjudicate Plaintiffs' motion for preliminary injunction. Ellison's suggestion that Rule 702 does *not* apply (Resp. 3) simply ignores the plain text of the Rules.

Courts generally consider the Rules of Evidence in Preliminary injunction proceedings, except for the Tenth Circuit's unexplained contrary remark.[1] While the Ninth Circuit remarked in a footnote that the Rules don't "strictly" apply in preliminary injunction proceedings, especially for hearsay objections (*Herb Reed*, Resp. 4), they certainly apply to challenged expert testimony. *See Masseth v. Jones*, No. EDCV 21-1408 JGB (SPx), 2021 U.S. Dist. LEXIS 252785, at *14 (C.D. Cal. Nov. 9, 2021) (citing *Herb Reed* and sustaining objections to paragraphs of unfounded expert testimony); *Guilfoyle v. Beutner*, No. 2:21-cv-05009-VAP (MRWx), 2021 U.S. Dist. LEXIS 195396, at *39 (C.D. Cal. Sep. 14, 2021) (citing *Herb Reed* and finding purported expert testimony inadmissible). Even in the Tenth Circuit, *Daubert* motions must be decided along with preliminary injunction. *See Warner v. Gross*,

---

[1] The Tenth Circuit announced its unique holding that "[t]he Federal Rules of Evidence do not apply to preliminary injunction hearings," not in response to any evidentiary challenge, but in a "Standards of Review" section. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

No. 14-CV-665-F, 2014 WL 7671680, Dkt. 179 (W.D. Okla. Dec. 22, 2014) (transcript of ruling), at 35 ("The Tenth Circuit has made it very clear that once a *Daubert* challenge is filed, the Court must make its findings on the record indicating its resolution of the *Daubert* challenge.").[2] Other courts agree.[3]

None of Ellison's other citations require the court to disregard the plain text of the Rules. In *Univ. of Tex. v. Camenisch*, the Supreme Court made the unremarkable observation that preliminary injunction decisions are made upon "evidence that is less complete than in a trial on the merits." 451 U.S. 390, 395 (1981). The opinion concerns mootness, not evidence. *Id.* at 398. Nowhere does *Camenisch* suggest that the Rules of Evidence should not apply to preliminary injunction hearings. To the contrary, parties have "neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." *Id*. at 396. Similarly, *Patterson v. Masem* simply found that a

---

[2] *See also Oklahoma ex rel. Edmondson*, discussed below.

[3] *See Michigan v. United States Army Corps of Eng'rs*, 667 F.3d 765, 783 (7th Cir. 2011) (affirming district court's "proper application of Federal Rule of Evidence 702" to preliminary injunction proceedings); *United States v. Prater*, No. CIV8:002CV2052T23MSS, 2002 WL 32107640, at *3 n.2, 2002 U.S. Dist. LEXIS 25685 (M.D. Fla. Dec. 19, 2002) (excluding purported expert); *Charter Nat'l Bank & Tr. v. Charter One Fin., Inc.*, No. 01 C 0905, 2001 WL 1035721, at *6, 2001 U.S. Dist. LEXIS 13919 (N.D. Ill. Sept. 4, 2001) (same).

preliminary injunction finding is not binding on a final order on the merits because a party at the preliminary injunction stage may introduce "less than all the material evidence." 774 F.2d 251, 254 (8th Cir. 1985). Thus, in the unlikely event Ellison later qualifies ChatGPT as an expert—before a final decision on the merits—he will have an opportunity to argue in favor of reliance on arguments drafted by an error-prone algorithm.

Other cases, like *Madigan*, *MSP Corp.*, *Boyles*, *Edmondson*, and *O Centro Espirita Beneficiente Uniao do Vegetal* (Resp. 4) stand for the proposition that the Court has discretion to weigh disputed evidence rather than formally exclude it. But Ellison provides no arguments that the Court *should* significantly weigh conclusory and machine-written testimony. In fact, *MSP Corp. v. Westech Instruments, Inc.*, without deciding admissibility, discounted testimony because "vague statement[s], without even identifying the speakers, are not reliable evidence" 500 F. Supp. 2d 1198, 1206 (D. Minn. 2007). Similarly, *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, found testimony "not sufficiently reliable under the standards enunciated in *Daubert*." No. 05-CV-329, 2008 WL 4453098, 2008 U.S. Dist. LEXIS 91390, at *26 (N.D. Okla. Sep. 29, 2008).

Ellison suggests that the Rules of Evidence do not apply to bench decisions (Resp. 5), but this is not quite right. Courts generally review disputed expert

7

evidence because they do not need to protect a jury from them, but the *Daubert* standard—usefulness, qualifications, and reliability—remains the benchmark for evaluating expert evidence. For example, when Minnesota's Attorney General submitted an unhelpful and arguably unreliable analysis in support of a law that would censor video game speech, the Court did not "undertake a *Daubert* analysis concerning the article's admissibility" because "the article itself identifies empirical flaws which keep it from actually supporting the State's purported interests." *Entm't Software Ass'n v. Hatch*, 443 F. Supp. 2d 1065, 1069 n.1 (D. Minn. 2006) (granting permanent injunction in favor of plaintiffs).

## II. The errors in Prof. Hancock's declaration go to the heart of its reliability.

Defendants characterize the errors in Prof. Hancock's original declaration as minor mistakes, corrected through their untimely amended submission. This argument is unpersuasive, especially in view of Prof. Hancock's subsequent declaration describing how he drafted the Nov. 1 declaration. Hancock used ChatGPT to cut-and-paste the first draft of his declaration and reviewed it so cursorily he did not notice fabricated publications in his alleged area of expertise. Opp. to Leave, at 9, 14-15.

For this reason, and contrary to Ellison (Resp. 9), Plaintiffs dispute that the Hancock declaration, as originally filed or as amended, is the work of a qualified

expert.[4] Plaintiffs reserve their right to discover Hancock's exact reliance on ChatGPT, which was available to Hancock but not disclosed to the Court, should Ellison later seek to qualify the testimony. Opp. to Leave, at 8-10.

Ellison's citations show only the unremarkable proposition that experts may revise their reports to account for new or overlooked facts. Resp. 7-8. None of the citations endorsed reliance of an expert's declaration outsourced to a non-expert, let alone an inhuman language model incapable of sorting fact from fiction. *See* Opp. to Leave 6 & n.1.

**III.   Contrary to Ellison, the declarations purport to find facts relevant to the case, not mere "background."**

Finally, Ellison contends that experts need not apply any particular methodology when they do not apply "specialized principles and methods to the facts of the particular case." Resp. 9. The lack of methodology is supposedly

---

[4] Plaintiffs did not previously challenge Prof. Hancock's hypothetical qualifications, but they did not imagine that the declaration was *actually drafted by ChatGPT*. Ellison may object to this as a new argument on reply, but their entire response is premised on notion that the untimely amended declaration functions "similar to how an amended complaint supplants the original." Resp. 2 n.1. A party responding to an amended complaint—and new facts concurrent with it— could certainly respond based on changed circumstances. To the extent Ellison disagrees, it further proves that his untimely motion to substitute prejudices Plaintiffs and should be denied for that reason. Opp. to Leave, at 8.

irrelevant because the experts "are educating the Court about general principles without applying those principles to the specifics of this case." *Id.* at 10.

The problem with this argument is evident four pages later, when Ellison asserts that the experts opine on "a question of fact, not a question of law"—whether counterspeech is "sufficient" to counteract false speech. *Id*. at 14. This is the ultimate legal question under *231 Care Committee*. The entire point of the declarations is to support Ellison's legal argument though alleged case-relevant expert analysis applied "to the specifics of this case." *Contra* Resp. 10; Mot. 10, 15, 21-23. For precisely this reason, Plaintiffs did not move to exclude the West declaration except for its final (and unsupported) conclusion: the preceding material is indeed background testimony. Mot. 17-21 (summarizing declaration and flagging unsupported final paragraph).

As in *Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, which Ellison relies on, "there is no other factual basis for [the experts'] broad conclusions." 829 F. Supp. 2d 802, 826 (D. Minn. 2011). "A court is not required 'to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id*. (quoting *Joiner*); *see also* Mot. 21. Here, both experts' reports go from surveying characteristics of AI deepfakes to *ipse dixit* conclusions that

10

counterspeech is "insufficient" and that the "market of ideas" no longer functions. Mot. 23.

Ellison cannot rely on unsupported factual claims that lack any apparent methodology. This violates the Rules of Evidence.

### IV.   Ellison's argument contradicts well-settled First Amendment law.

Ellison offers various unsworn theories for why Hancock and West's testimony contradict their prior publications (Resp. 16-17), and concludes with an argument that would vaporize most First Amendment caselaw, if credited:

> Plaintiffs have presented no evidence disputing that, once a deepfake is unleashed on the world, it is unlikely that everyone whose decisionmaking is impacted by the deepfake will see any counterspeech response. Doc. 24, ¶¶ 14-17, 19-22. And if counterspeech cannot reach viewers, it necessarily follows that such speech will not adequately combat the deepfake.

Resp. 17.

This is true of *all* speech. Counterspeech for any "unleashed" falsehood will not be seen by *every* listener of the falsehood. Were this the standard, numerous cases could have come out differently, including *Alvarez*, *NIFLA*, and *231 Care Committee*. Instead, Defendants' must carry the burden to "dispel the generally accepted proposition that counterspeech may be a logical solution to the interest advanced in this case." *281 Care Comm. v. Arneson*, 766 F.3d 774, 793 (8th Cir. 2014).

11

This is not only a matter of "sufficiency" (a term the declarations do not define because they transparently issue unsupported opinions on the ultimate question of law, Mot. 22-23), but also because counterspeech is usually the "less restrictive means to abate the alleged interest." *281 Care Comm.*, 766 F.3d at 793-94. Neither declaration addresses restrictiveness, and in fact the West declaration implies that other measures to combat deepfakes exist. Mot. 34.

Ellison's conclusion shows again that not only is Hancock's declaration unreliable, but that the conclusory material in both declarations is *unhelpful* to the Court and should be excluded for this independent reason.

## CONCLUSION

The Hancock declaration, drafted by ChatGPT, must be excluded as filed, and as untimely amended without excuse. Ellison does not contest exclusion should the Court deny is motion leave to file out of time, as it should. Dkt. 42.

While the West declaration may be used by the court for background, its unsupported concluding paragraph—purporting to find facts relevant to this case without any methodology whatsoever—should be excluded.

12

Dated: December 13, 2024    Respectfully submitted,

/s/ *M. Frank Bednarz*
Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
Alexandra K. Howell (#0504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Drive, Suite 140
Minnetonka, MN 55343
Voice: 612-428-7000
Email: Doug.Seaton@umlc.org
James.Dickey@umlc.org
Allie.Howell@umlc.org

M. Frank Bednarz (*pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
1440 W. Taylor St. # 1487
Chicago, IL 60607
Voice: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Plaintiffs Christopher Kohls and Mary Franson*