# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1300
_____

Christopher Kohls; Mary Franson,

*Plaintiffs - Appellants*,

v.

Keith M. Ellison, in his official capacity as Attorney General of Minnesota; Chad Larson, in his official capacity as County Attorney of Douglas County,

*Defendants - Appellees*.
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 22, 2025
Filed: February 9, 2026
_____

Before COLLOTON, Chief Judge, LOKEN and BENTON, Circuit Judges.
_____

COLLOTON, Chief Judge.

    Christopher Kohls and Mary Franson sued officials in Minnesota seeking to enjoin them from enforcing a Minnesota statute that regulates the use of "deep fake" technology to influence elections. A "deep fake" is defined as material "that is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." Minn. Stat.

§ 609.771, subd. 1(c)(1). The district court[*] determined that only Franson had standing to challenge the statute, and then denied a motion for a preliminary injunction on the ground that she had unreasonably delayed in seeking relief. We conclude that there was no abuse of discretion in denying the request for extraordinary relief.

I.

In May 2023, the Minnesota legislature enacted a law regulating deep fakes. The relevant text reads as follows:

> A person who disseminates a deep fake or enters into a contract or other agreement to disseminate a deep fake is guilty . . . if the person knows or reasonably should know that the item being disseminated is a deep fake and dissemination:
> (1) takes place within 90 days before an election;
> (2) is made without the consent of the depicted individual; and
> (3) is made with the intent to injure a candidate or influence the result of an election.

Minn. Stat. § 609.771, subd. 2 (2023). A deep fake is defined as "any video recording, motion-picture film, sound recording, electronic image, or photograph, or any technological representation of speech or conduct . . . that is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." *Id.*, subd. 1(c)(1) (2023).

In 2024, the legislature amended the law. The amendment expanded the scope of the prohibition to include the periods "within 90 days before a political party nominating convention" or "after the start of the absentee voting period." *Id.*, subds.

---

[*]The Honorable Laura M. Provinzino, United States District Judge for the District of Minnesota.

-2-

2(a)(3)(i), 2(a)(3)(ii). As amended, the statute further provides that a state or local candidate who violates the law must forfeit any nomination or elected office, and is disqualified from any future appointment to office. *Id.*, subds. 3(b), 3(c).

Kohls is a political commentator who produces and publishes parodies on social media. On July 26, 2024, Kohls broadcast on the YouTube website a video generated by artificial intelligence that depicted a likeness of Vice President Harris making statements that she never made. The video was labeled as "PARODY" and included a disclaimer stating that "[s]ounds or visuals were significantly edited or digitally generated." Elon Musk shared the video on the "X" social networking service but did not convey that the video was a parody or was generated artificially. Franson, a member of the Minnesota state legislature, shared Musk's post on her own "X" account. She, too, did not communicate that the video was a parody.

In September 2024, Kohls and Franson challenged the deep fake statute by suing the attorney general of Minnesota and the county attorney of Douglas County in their official capacities. They alleged that the statute abridges their freedom of speech in violation of the First and Fourteenth Amendments, and sought to enjoin the officials from enforcing the statute.

On October 11, 2024, more than sixteen months after the legislature enacted the challenged provisions in May 2023, Kohls and Franson moved for a preliminary injunction. The district court ruled that Kohls lacked standing because he posted only videos that were outside the scope of the deep fake statute. The court concluded that Franson had standing, but denied her motion for a preliminary injunction because she unreasonably delayed in seeking relief. We review the question of Article III standing *de novo* and the decision to deny a preliminary injunction for abuse of discretion. *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022); *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013).

II.

To establish Article III standing, a plaintiff must show that he suffered an injury in fact, that the challenged conduct caused the injury, and that the requested relief would redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Where, as here, a plaintiff seeks review of a statute before it is enforced, he must demonstrate that there is "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (internal quotation omitted). At the preliminary injunction stage, a plaintiff must make a "clear showing" that he is "likely" to establish each element of standing. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

The district court ruled that only Franson had standing. On appeal, Kohls argues that he, too, has standing. The officials counter that Franson lacks standing. We believe that the district court resolved the standing issues correctly on this record.

Kohls argues that he is injured because § 609.771 arguably proscribes his online parodies. To qualify as a deep fake under the statute, a video must be "so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." § 609.771, subd. 1(c)(1). By labeling his videos as parody, however, Kohls communicates that statements in the videos "cannot reasonably [be] interpreted as stating actual facts." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (alteration in original) (internal quotation omitted). Kohls's videos, labeled as parodies, are not deep fakes under the statute, so he is not injured by any threat of enforcement.

Kohls contends alternatively that he is injured because he posts other videos that are not labeled as parodies. In the district court, however, Kohls presented no evidence that he posted videos without disclaimers. The district court found, without

-4-

clear error, that "[f]rom the record presented by Plaintiffs, it appears that Kohls has only ever posted constitutional parody." Kohls thus failed to show that he faces a credible threat of prosecution under § 609.771.

Kohls further maintains that he is injured by the threat of enforcement against third parties. His verified complaint alleges that "[t]he chilling effect and enforcement of the law will dissuade others from sharing his content and preclude him from earning a living, which he currently does via monetization of his content on YouTube and X."

"Where traceability and redressability depend on the conduct of a third party not before the court, 'standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 381 (D.C. Cir. 2020) (quoting *Defs. of Wildlife*, 504 U.S. at 562). A plaintiff must show that third parties will act "in such manner as to produce causation and permit redressability of injury." *Id*. (internal quotation omitted). A permissible theory of standing "does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *see Competitive Enter. Inst*, 970 F.3d at 381-82.

The record is insufficient to establish standing on this theory. The evidence showed that Kohls's video of July 26 depicting a likeness of Vice President Harris "was retweeted over 240 thousand times." Kohls did not present evidence that others were deterred from sharing the video or that he lost income from any such reduction in sharing. A plaintiff cannot establish standing based merely on an unsupported assumption that some users of YouTube or X might decline to share a video because of the Minnesota statute.

The officials argue that Franson lacks standing even though she reshared Kohls's video depicting Vice President Harris without any accompanying label or disclaimer. The district court concluded that Franson's conduct was arguably proscribed by § 609.771, because a reasonable person could believe that the video depicted actual speech or conduct of Harris in which she never engaged.

We see no error in this conclusion. The officials argue that even without any disclaimers, no reasonable person would believe that the video depicted actual speech or conduct of Harris. The officials' own expert, however, testified that deep fake videos are "plausibly realistic, so much so that users often cannot tell whether they are real or not." There is no evidence that Kohls's deep fake videos are clearly unrealistic. And there was evidence that senior public officials, including a sitting governor and a sitting United States Senator, believed that the July 26 video was realistic. The district court properly concluded that Franson established standing to sue.

### III.

Franson argues that the district court abused its discretion in denying her request for a preliminary injunction. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The district court did not rule on the constitutionality of the statute, but concluded that Franson was not entitled to extraordinary injunctive relief because she unreasonably delayed in bringing her challenge.

A plaintiff seeking a preliminary injunction must demonstrate that she is "likely to suffer irreparable harm" without relief. *Id.* at 20. A plaintiff's unreasonable delay in seeking a preliminary injunction "vitiates much of the force of their allegations of irreparable harm." *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977). That is so because the "failure to act sooner undercuts the sense of urgency that ordinarily

accompanies a motion for preliminary relief." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (internal quotation omitted).  The district court found that Franson delayed for more than sixteen months before seeking relief, and that her delay made extraordinary equitable relief inappropriate.

The district court did not abuse its discretion in denying relief.  A plaintiff's delay may justify denial of preliminary injunctive relief where it is not adequately explained, *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995), and Franson has not provided a sufficient explanation for her sixteen-month delay.

On appeal, Franson argues that she really did not delay for sixteen months because the legislature amended the 2023 statute in July 2024.  The 2024 amendments, however, altered only the timing and penalty provisions of the statute.  They did not change the statute's basic prohibition on dissemination of deep fake videos, the enforcement of which Franson seeks to enjoin.  Franson's proposed conduct was arguably proscribed and subject to criminal penalties ever since May 2023.  She voted for the 2023 law as a member of the legislature and possessed the complete factual predicate of her suit at that time.  The district court found that Franson disseminated content "as early as 2021" that arguably would be proscribed by the statute.  The court did not err in finding that nothing about the 2024 amendments changed the basis for Franson's alleged fear that her speech would be punished under the statute.

Franson disputes this conclusion on the ground that there were no federal elections in 2023 about which she sought to disseminate deep fake content.  But there were state and local elections during 2023.  And Franson, a member of the Minnesota legislature, alleged without limitation that it was her practice to disseminate "videos featuring the likeness of real politicians for comedic or satirical effect" to her "constituents, colleagues, and ideological allies."  The district court did not err in construing Franson's claim to encompass content concerning state or local elections.

-7-

Franson contends that delay cannot preclude a finding of irreparable harm where First Amendment rights are involved. To be sure, the Supreme Court has said that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). But the Court also has said that a plaintiff must generally show "reasonable diligence" in seeking a preliminary injunction, even where First Amendment rights are allegedly at stake. *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam). *Elrod* and *Roman Catholic Diocese* did not concern a delay in seeking preliminary relief, and those decisions do not undermine the district court's ruling here. *See Hotchkiss v. Cedar Rapids Comm. Sch. Dist.*, 115 F.4th 889, 893-94 (8th Cir. 2024); *cf. Yoseph v. Sec'y, Fla. Dep't of Corr.*, No. 25-10113, 2025 WL 2366445, at *6 (11th Cir. Aug. 14, 2025) (per curiam).

The district court entered its order on preliminary relief in January 2025, and the case likely could have proceeded toward a final resolution on the merits in the year that has elapsed since. But Kohls and Franson appealed the order denying preliminary relief, and then stipulated that the case should be stayed in the district court pending disposition of this appeal. At oral argument, counsel explained that the plaintiffs sought "guidance" from the court of appeals on the merits of their constitutional claims. This court, however, does not sit to dispense guidance on matters that are unnecessary to a decision.

We conclude here only that the district court did not abuse its discretion in denying extraordinary preliminary relief in light of the delay in bringing the request. The purpose of interim equitable relief, where appropriate, is to balance the equities as the litigation moves forward, *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam), and the district court did not abuse its discretion in concluding that Franson's delay weighed definitively against her request.

-8-

In further proceedings, the district court may consider any additional evidence regarding whether Kohls has standing under Article III and, if there is standing, whether he is entitled to relief on the merits. The court also may address whether Franson is entitled to permanent injunctive relief on the merits, despite her delay in seeking preliminary relief, under the different considerations that apply to the question of permanent relief. *See Denali Summit, LLC v. Union Elec. Co.*, 158 F.4th 896, 899-900 (8th Cir. 2025).

The judgment of the district court is affirmed.

_____